1
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                          ----oo0oo----

12

13  RENEE ODETTE LANCASTER,
                                    NO. CIV. S-03-2342 FCD DAD
14          Plaintiff,

15      v.                          MEMORANDUM AND ORDER

16  COUNTY OF YOLO; COUNTY OF
    YOLO, SHERIFF'S DEPARTMENT;
17  SHERIFF ED PRIETO,
    individually and in his
18  official capacity; SGT. KEN
    FISCH;
19
            Defendants.
20                                  ----oo0oo----

21

22      This matter comes before the court on defendants' County of

23  Yolo, County of Yolo Sheriff's Department, Sheriff Ed Prieto, and

24  Sergeant Ken Fisch (collectively, "defendants") motion to dismiss

25  pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6),

26  and 41(b), and motion for sanctions pursuant to Federal Rule of

27  Civil Procedure 11.  The motions are in response to plaintiff

28  Renee Odette Lancaster's ("plaintiff's") second amended complaint

alleging fifteen claims of sexual harassment and discrimination in violation of federal and state laws.  (Pl.'s Second Am. Compl. ("Compl."), filed November 29, 2004).  For the reasons set forth below, defendants' motion to dismiss is GRANTED in part and DENIED in part and their motion for sanctions in DENIED.[1]

## BACKGROUND

Plaintiff was terminated by the Yolo County Sheriff's Department on October 16, 2003.  (Compl. at 4.)  Subsequently, plaintiff filed a complaint seeking recovery for the allegedly unlawful termination.  However, the initial complaint was never served on defendants; thereafter on August 23, 2004, plaintiff filed and served on defendants a First Amended Complaint.  In response, defendants filed a motion to dismiss the complaint and a motion for more definite statement.  Plaintiff did not oppose these motions, but instead filed a non-opposition and request for leave to amend the complaint.  In its November 16, 2004 order, the court granted plaintiff's request for leave to amend, providing her with *one final* opportunity to correct the deficiencies in her complaint.  Plaintiff subsequently filed a second amended complaint on November 28, 2004.  Defendants responded by filing the instant motion, seeking to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 41(b).

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

2

**STANDARD**

**A.    Rule 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may raise the defense that the court lacks "jurisdiction over the subject matter" of a claim.  Fed. R. Civ. P. 12(b)(1). It is well established that the party seeking to invoke federal jurisdiction bears the burden of establishing the court's subject matter jurisdiction.  Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

On a motion to dismiss pursuant to Rule 12(b)(1), the standards the court is to apply vary according to the nature of the jurisdictional challenge.  A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face ("facial attack"), or may attack the existence of subject matter jurisdiction in fact ("factual attack").  Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  If the motion constitutes a facial attack, the court must consider the factual allegations of the complaint to be true.  Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill, 594 F.2d at 733 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  Further, "[w]here a jurisdictional issue is separable from the merits of a case," the court "may consider the

3

1  evidence presented with respect to the jurisdictional issue and

2  rule on that issue, resolving factual disputes if necessary."

3  Id.

4  **B.   Rule 12(b)(6)**

5      Federal Rule of Civil Procedure 12(b)(6) provides that a

6  court may dismiss a complaint for "failure to state a claim upon

7  which relief can be granted."  However, the court may not dismiss

8  the complaint for failure to state a claim unless it appears

9  beyond a doubt that the plaintiff can prove no set of facts in

10 support of the claim which would entitle him to relief.  Conley

11 v. Gibson, 355 U.S. 41, 45 (1957); NL Industries, Inc. v. Kaplan,

12 792 F.2d 896, 898 (9th Cir. 1986).

13     In deciding a motion to dismiss, the court should take all

14 factual allegations set forth in the complaint "as true and

15 construed in the light most favorable to [p]laintiffs."  Epstein

16 v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1999).

17 Any ambiguity in the documents must be resolved in plaintiff's

18 favor.  Telluride Management Solutions, Inc. v. Telluride

19 Investment Group, 55 F.3d 463, 466 (9th Cir. 1995).  Further, the

20 court must assume that all general allegations embrace whatever

21 specific facts might be necessary to support them.  Lujan v.

22 Nat'l Wildlife Federation, 497 U.S. 871, 889 (1990); Abramson v.

23 Brownstein, 897 F.2d 389, 391 (9th Cir. 1990).  However, the

24 court need not "assume that the [plaintiff] can prove facts that

25 it has not alleged."  Associated Gen. Contractors of Cal., Inc.

26 v. Cal. State Council of Contractors, 459 U.S. 519, 526.

27     In ruling upon a motion to dismiss, the complaint must be

28 read as a whole, and where specific allegations clarify the

4

meaning of broader allegations, they may be used to interpret the
true meaning.  <u>Pegram v. Herdrich</u>, 530 U.S. 211, 230 (2000).  The
materials that the court may consider is limited to
the complaint, any exhibits thereto, and any matters which may be
judicially noticed pursuant to Federal Rule of Evidence 201.  <u>See</u>
<u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir.
1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States</u>,
Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.    <u>Pleading Standard For Plaintiff's Claims</u>**

Preliminarily, the court considers defendants' argument that
there is a heightened pleading standard in civil rights cases
such that conclusory allegations are insufficient to survive a
motion to dismiss.[2]  Defendants are incorrect.  In civil rights
cases, a heightened pleading standard is only applied to claims
in which subjective intent is an element of an alleged
constitutional tort.  For example, in <u>Magana v. Com. of the</u>
<u>Northern Mariana Islands</u>, the court upheld the district court's
use of a heightened pleading standard because the defendants were
sued in their individual capacities, and therefore subjective
intent could be, and indeed was, an element of the alleged
constitutional tort.  <u>Magana v. Com. of the Northern Mariana</u>
<u>Islands</u>, 107 F.3d 1436, 1447 (9th Cir. 1997).  However, in the

---

[2] As support, defendants' cite to O'CONNOR'S FEDERAL RULES *
CIVIL TRIALS (2005), which states: "When drafting a complaint for
federal court, the plaintiff must plead an adequate factual and
legal basis for its claims.  Although notice pleading generally
suffices, in certain types of suits (e.g. civil rights,
employment discrimination, RICO, and fraud), specific factual
allegations are required."

instant case, defendants Prieto and Fisch are not being sued in their individual capacity, but rather are being sued in their official capacity.  Therefore, there can be no question as to defendants' intent, which necessarily makes defendants' reliance on a heightened pleading standard improper.  Because no such standard applies, the court must follow the general standard requiring a liberal construction of pleadings in civil rights cases.  Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992).[3]

**B.    Ripeness**

Plaintiff alleges that she exhausted all of her administrative remedies.  (Compl. at 5.)  Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants, nonetheless, make a factual attack on this allegation, disputing that plaintiff, indeed, exhausted all of her remedies.  Because this is a factual attack, the court may evaluate the merits of the claim itself, without having to take plaintiff's allegations as true. Thornhill, 594 F.2d at 733 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  However, from the materials provided by the parties, including, particularly, Exhibit D of the Sarno declaration, this court cannot find that plaintiff has not exhausted her administrative remedies.  While defendants assert that the letter in Exhibit D is conclusive proof that exhaustion has not occurred, the court does not agree; rather it finds that the letter does not demonstrate that

---

[3] Moreover, the court also notes that its November 16, 2004 order did not impose a heightened pleading standard on plaintiff. Rather, the order merely provided guidance for plaintiff's subsequent amendment.

1  plaintiff is continuing to pursue administrative remedies.  (Cori

2  Sarno Decl. Supp. Defs.' Mot. To Dismiss, filed January 20, 2005,

3  Exhibit D ("Sarno Decl.").)

4       The letter states that the hearing officer would not have

5  jurisdiction over many of the issues intended to be raised by

6  plaintiff, and asks plaintiff to indicate if and how she wishes

7  to proceed.  (Id.)  Specifically, the letter states that the

8  following claims are clearly not within the jurisdiction of the

9  hearing officer; (1) Labor Code section 132(a) retaliatory

10  termination claim, (2) EEOC retaliatory termination claim, (3)

11  EEOC claim concerning stalking and failure to properly

12  investigate, (4) any claims against a public entity, and (5) any

13  1983 actions in Federal Court, including Title VII violations,

14  POBR violations, and other torts.  (Id.)  In addition, the letter

15  states that no hearing is required regarding the "Skelly Hearing"

16  because plaintiff's disability retirement claim moots the issue.

17  (Id.)  In light of these statements, it is possible plaintiff

18  believed that any further action regarding the hearing would be

19  futile.  Essentially, the letter indicates a lack of jurisdiction

20  as to all, or almost all of plaintiff's claims herein.

21  Therefore, plaintiff may have believed that an administrative

22  hearing was not the appropriate venue to bring forth her claims,

23  and choose instead to bring the instant action.[4]

24

25       [4] Nothing in this motion would prevent defendants from
   bringing a motion for summary judgment seeking to show that
26  plaintiff is currently involved in the administrative action
   referenced in the letter.  In plaintiff's opposition she merely
27  notes that she had received right to sue letters, which is not
   the equivalent of exhausting all administrative remedies.  In
28                                                  (continued...)

C. **Claims For Relief**

1. **Plaintiff's Title VII gender discrimination claim**

To state a prima facie case of discrimination, a plaintiff must show that: (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). If plaintiff establishes a prima facia case, then the burden shifts to the defense to establish that the "adverse employment action" occurred for a legitimate, nondiscriminatory reason. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).

Title VII prohibits employment discrimination based on many enumerated grounds, including gender discrimination. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)). Sexual harassment is a form of gender discrimination because it is conceptually the same as imposing more onerous duties upon one gender for the same pay as the other gender. Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir.

---

[4](...continued)
addition, it should be noted that plaintiff does not have the right to simply abandon her administrative proceedings. Schifando v. City of Los Angeles, 31 Cal. 4th 1074, 1088 (2003). Rather, plaintiff has the choice to bring either a civil or administrative proceeding, and once she has chosen one route she must see it through to completion. To allow otherwise would effectively give plaintiff "a second bite of the procedural apple." Id. at 1090. However, because plaintiff alleges "exhaustion" in the complaint, and because the present documentation does not demonstrate otherwise, a lack of ripeness does not bar the claim.

1   2000).  If sexual harassment is committed or tolerated by the

2   employer, the employer can be held liable.  <u>Id.</u>

3        A sexual harassment claim can be shown by proving the

4   existence of a hostile work environment, such that the workplace

5   atmosphere is so discriminatory and abusive that it unreasonably

6   interferes with the job performance of those harassed.  <u>Harris</u>,

7   510 U.S. at 21.  The working environment must be both

8   subjectively and objectively abusive: subjectively abusive to the

9   actual employee, and objectively abusive to the "reasonable

10  victim."  <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1527 (9th Cir.

11  1995) (citing <u>Harris</u>, 510 U.S. at 21-22).  The Ninth Circuit has

12  held, "the required showing of severity or seriousness of the

13  harassing conduct varies inversely with the pervasiveness or

14  frequency of the conduct."  <u>Ellison v. Brady</u>, 924 F.2d 872, 878

15  (9th Cir. 1991) (citing <u>King v. Board of Regents</u>, 898 F.2d 533,

16  537 (7th Cir. 1990)).  Thus, in order to plead a hostile working

17  environment, the plaintiff must show that the defendant's alleged

18  conduct could unreasonably interfere with the performance of a

19  reasonable woman, and did in fact interfere with plaintiff's

20  performance.  <u>Brooks</u>, 229 F.3d at 924.

21       In the instant action, plaintiff has sufficiently stated a

22  claim for discrimination under Title VII.[5]  First, plaintiff

23  alleges that she was discriminated against on the basis of her

24

25       [5] It should be noted that in its November 16, 2004 order
26  granting leave to amend, the court stated that as to this claim,
    in addition to several others, the individual defendants could
27  not be held personally liable.  In her second amended complaint,
    plaintiff no longer asserts liability against the individual
28  defendants in their individual capacity and therefore has
    corrected this deficiency.

1  gender, which is a protected class.  (Compl. at 9.)  Second, the
2  court can infer that plaintiff experienced a hostile work
3  environment based on her allegations regarding a pattern of
4  sexual harassment in the workplace.  (Compl. at 7.)  Third,
5  because this court is bound to give plaintiff the benefit of
6  every reasonable inference to be drawn from the allegations of
7  the complaint, this court must assume that plaintiff was
8  performing according to her employer's legitimate expectations.
9  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6
10 (1963).  Fourth, plaintiff alleges that she was terminated due to
11 her gender, clearly representing an adverse employment action.
12 (Compl. at 6-7.)  Finally, from the overall nature of plaintiff's
13 allegations, this court can draw the reasonable inference that
14 plaintiff was treated less favorably than similarly situated men.

15      Defendants try to rebut plaintiff's claim, stating that
16 plaintiff was terminated for a legitimate reason, specifically
17 that she failed to give written notice of her leave of absence.
18 (Reply Supp. Defs.' Mot. To Dismiss ("Reply"), filed March 25,
19 2005, at 17.)  However, at this stage in the pleadings this court
20 must assume that plaintiff's allegations are true, therefore
21 plaintiff states a claim upon which relief can be granted.

22      **2.   Plaintiff's FEHA claim alleging gender discrimination**

23      Plaintiff's gender discrimination claim pursuant to
24 California Government Code § 12940 falls under the California
25 Fair Employment and Housing Act ("FEHA").  Courts evaluate FEHA
26 claims under the same standards as those under Title VII.  See
27 Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 517 (1998)
28 ("Although the wording of title VII differs in some particulars

10

from the wording of FEHA, the antidiscriminatory objectives and overriding public policy purposes of the two acts are identical. In an area of emerging law, such as employment discrimination, it is appropriate to consider federal cases interpreting title VII."); Okoli v. Lockheed Tech. Operations Co., 36 Cal. App. 4th 1607, 1614 n. 3 (1995).  Therefore, the analysis and conclusion regarding this claim is the same as for plaintiff's Title VII claim.  As discussed above, plaintiff has properly stated a Title VII claim, and thus also properly alleges a FEHA gender discrimination claim.

### 3.   Plaintiff's Title VII retaliation claim

To establish a prima facie case of Title VII retaliation, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action.  Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984).  If the plaintiff makes a prima facie case, the burden of production shifts to the defendant (employer) to articulate some legitimate, nonretaliatory reason for the adverse action.  Id.  If the employer makes such a showing, the employee can rebut this by demonstrating that the employer's actions were motivated by discriminatory intent, in essence showing that the "legitimate" reason was simply a pretext.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Here, plaintiff has sufficiently pled all of the above elements.  First, plaintiff alleges she engaged in protected activity when making complaints regarding defendants' actions,

11

including sexual harassment, stalking, and unauthorized
surveillance.  (Compl. at 10.)  Reporting sexual harassment has
been found to be a "protected activity."  Brooks, 229 F.3d at 928
("Asserting one's civil rights, as Brooks did by complaining of
Selvaggio's [sexually harassing] conduct, is a protected activity
under Title VII.");  EEOC v. Crown Zellerbach Corp., 720 F.2d
1008, 1013 (9th Cir.1983).  Further, plaintiff alleges that she
was retaliated against based upon the filing of an EEOC
complaint.  (Id.)  This too has been held to be a "protected
activity."  EEOC v. Hacienda Hotel, 881 F.2d 1504 (9th Cir.
1989).

Second, plaintiff alleges that she suffered an adverse
employment action when she was terminated.  (Compl. at 6-7.)  In
Ray v. Henderson, the Ninth Circuit stated: "[A]n action is
cognizable as an adverse employment action if it is reasonably
likely to deter employees from engaging in protected activity."
Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  Clearly
termination would deter employees from engaging in protected
activity, and therefore is a sufficient adverse employment
action.  See O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d
756, 763 (9th Cir. 1996) (stating that termination is a
sufficient adverse action).

Finally, plaintiff alleges that she was terminated as a
result of reporting defendants' improper activity, thus
demonstrating a sufficient causal connection between the
protected activity and the adverse employment action.  (Compl. at
6-7.)  In addition to the causal connection, to support an
inference of retaliatory motive the termination must have

12

occurred fairly soon after the protected expression.  <u>Villiarimo</u>
<u>v. Aloha Island Air, Inc.</u>, 281 F.3d 1054 (9th Cir. 2002).  In the
instant case, plaintiff has not pled specific dates regarding the
alleged protected activities; however, at this stage of the
pleadings, this court must assume that the termination occurred
"fairly soon" after the protected expression.  <u>Miller v Fairchild</u>
<u>Industries Inc.</u>, 797 F.2d 727 (9th Cir. 1986) (stating that
termination within 2 months or less of the protected expression
is sufficient to show retaliation).  Thus, plaintiff has
sufficiently pled all three elements and therefore states a claim
upon which relief can be granted.

### 4.  Plaintiff's FEHA claim alleging retaliation for engaging in a protected activity

As in gender discrimination cases, lawsuits alleging
retaliatory employment discrimination in violation of
California's FEHA statute are analogous to federal Title VII
claims, and are therefore evaluated under federal law.  <u>See</u> <u>Beyda</u>
65 Cal. App. 4th at 517; <u>Okoli</u>, 36 Cal. App. 4th at 1614 n. 3.
Thus, under the preceding Title VII analysis, plaintiff has
properly stated a retaliation claim under FEHA.

### 5.  Plaintiff's First and Fourteenth Amendment free speech claims

Plaintiff alleges that her termination violated her First
Amendment right to free speech.  (Compl. at 11.)  The United
States Supreme Court has stated in addressing an employee's right
to free speech that courts must be mindful of protecting both the
rights of the employer and the rights of the employee.  To remedy
this problem, the Court developed what is known as the
"Pickering" balancing test.  <u>Pickering v. Board of Ed. of Tp.</u>

13

High School, 391 U.S. 563 (1968).  This test requires a court to weigh "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the ... employer, in promoting the efficiency of the public services it performs through its employees."  Id. at 568; see also Connick v. Myers, 461 U.S. 138, 142 (1983).  However, subsequent courts feared that this balancing test would compromise the proper functioning of government offices, and have emphasized that the test is only to be employed when the employee's speech touches on a matter of "public concern."  Connick, 461 U.S. at 143. Specifically, the Court in Connick held that a public employee's speech is entitled to Pickering balancing only when the employee speaks "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest."  Id. at 147.  An issue of public concern has been defined as something that is a subject of general interest, of value, and of concern to the public at the time of publication.  Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975); Time, Inc. v. Hill, 385 U.S. 374, 387-388 (1967).

In the instant case, plaintiff allegedly complained of several issues of "public concern," therefore her termination based upon these statements was a violation of her First Amendment rights.  (Compl. at 11.)  Specifically, the complaint states that plaintiff complained of sexual harassment, biased and improper EEOC investigations, and the abuse of government funds, among other things.  (Id.)  Each of these allegations, assuming them true, are issues of "public concern," as surely the public has a right to know of any acts of impropriety within the police

1  department.

2      In response, defendants claim that plaintiff was merely
3  airing personal grievances.  (Defs.' Mem. Supp. Mot. To Dismiss
4  at 11.)  However, contrary to defendants' contention, even if
5  plaintiff's allegations were of personal interest, that fact
6  alone does not require dismissal if there is nonetheless
7  sufficient "public concern."  Smith v. United States, 502 F.2d
8  512, 517 (5th Cir. 1974).  The court in Smith v. United States
9  stated: "Smith's involvement in an issue of public concern did
10 grow out of his own personal interests in the subject since he
11 was directly affected by it.  After all, who among us ordinarily
12 gets aggressively involved in issues in which he or she has no
13 personal interest?"  Id.  (Citations omitted).  In the instant
14 case, because plaintiff's speech allegedly was regarding issues
15 of public concern, she adequately alleges a First Amendment
16 claim.

17     **6.    Plaintiff's Fourteenth Amendment equal protection claim**

18     The Equal Protection Clause of the Fourteenth Amendment
19 commands that "no State shall deny to any person within its
20 jurisdiction the equal protection of the laws."  This clause
21 guarantees the right of all similarly situated persons to be
22 treated alike.  City of Cleburne v. Cleburne Living Ctr., 473
23 U.S. 432, 439 (1985).  To state an equal protection claim
24 pursuant to 42 U.S.C. § 1983, a plaintiff must show that the
25 defendant acted with intent to discriminate against him based
26 upon membership in a protected class.  Barren v. Harrington, 152
27 F.3d 1193, 1194 (9th Cir. 1998).  Where the challenged
28 governmental policy discriminates against a person on the basis

15

of his gender, the classification must "serve important governmental objectives and must be substantially related to achievement of those objectives" in order to survive a constitutional challenge.  <u>Craig v. Boren</u>, 429 U.S. 190, 197 (1976).

In this case, plaintiff claims that she was treated differently than similarly situated male counterparts.  (Compl. at 11.)  However, it is not entirely clear from the allegations in the complaint *how* plaintiff was treated differently. Nonetheless, reading the complaint as a whole and making reasonable inferences therefrom, the court can conclude that plaintiff alleges, generally, that she was treated differently than male employees when she complained to the police department about things such as harassment and other "protected activities."

In order to rebut plaintiff's equal protection claim, defendants assert that the termination was not based upon discriminatory intent, but rather due to plaintiff's failure to provide a written request for her leave of absence.  (Reply at 17.)  If true, this would suggest that there was not a gender classification, however this is not a matter to be resolved on a 12(b)(6) motion.  At this stage in the pleadings, this court must assume that plaintiff's allegations are true, specifically that her termination was due to her gender.  Treating persons differently on the basis of gender is unconstitutional.  Thus, plaintiff states a claim upon which relief can be granted.

**7.   Plaintiff's Fourteenth Amendment due process claim**

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due

16

process.  To sufficiently plead a § 1983 claim based upon
procedural due process, plaintiff must show: (1) a liberty or
property interest protected by the Constitution, (2) a
deprivation of the interest by the government, and (3) lack of
process.  See Mathews v. Eldridge, 424 U.S. 319 (1976).

As to the first element, plaintiff clearly does not have a
valid property interest in her employment.  A government employee
only has a constitutionally protected property interest in
continued employment when the employee has a legitimate claim of
entitlement to the job.  Board of Regents v. Roth, 408 U.S. 564,
577 (1972).  Where an employee is terminable at will, there is no
legitimate entitlement to the job, but rather only a mere
expectation of continued employment.  Id.  A mere expectation
that employment will continue does not create a property
interest.  Id.

However, even though plaintiff lacks a valid property
interest in her continued employment, this court finds that she
has alleged a valid liberty interest in protecting her standing
within the community.  (Compl. at 12.)  Courts have held that a
mere injury to reputation is not sufficient to assert a liberty
interest, whereas a showing of serious damage within the
community will suffice.  Siegert v. Gilley, 500 U.S. 226 (1991);
Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1100 (9th Cir.
1981).  The court in Bollow defined what is sufficient to
constitute serious damage, stating, "to implicate a
constitutional liberty interest, the reasons for dismissal must
be sufficiently serious to stigmatize or otherwise burden the
individual so that [she] is not able to take advantage of other

1   employment opportunities." Bollow, 650 F.2d at 1101.

2   Subsequently, courts have suggested that to maintain a cognizable

3   constitutional interest, the accusations must involve "moral

4   turpitude" on behalf of the individual, such as dishonesty or

5   immorality. Id.   Further, as to the process required, the court

6   in Bollow stated that "when the government dismisses an

7   individual for reasons that might seriously damage [her] standing

8   in the community, [she] is entitled to notice and a hearing to

9   clear [her] name." Id.

10      Considering the complaint as a whole, plaintiff has

11  sufficiently pled a cognizable claim under Bollow, namely that

12  she stands to suffer serious damage to her standing in the

13  community due to the accusations made by defendants. (Compl. at

14  12.)  In particular, plaintiff alleges defendants' involvement in

15  the initiation of false criminal charges against her. (Id.)  For

16  the purposes of this motion, the court assumes that plaintiff's

17  claims are true and finds that these types of statements are

18  sufficient to allege that plaintiff stands to have her reputation

19  within the community "seriously damaged" to the point where she

20  could be foreclosed of employment opportunities.  Thus, plaintiff

21  has alleged a sufficient liberty interest.

22      In regards to the other two elements of a due process claim,

23  plaintiff has also sufficiently pled that she was deprived of her

24  liberty interest without due process. (Id.)  Due process

25  entitled plaintiff to a name clearing hearing to repair her

26  damaged reputation. Bollow, 650 F.2d at 1101; see also  Board of

27  Regents v. Roth, 408 U.S. at 573 & n.12 (1972).  Because

28  plaintiff never received this hearing, her liberty interest was

1  deprived without proper due process.  Thus, plaintiff has

2  sufficiently pled a claim upon which relief can be granted.[6]

3      **8.   Plaintiff's Fourteenth Amendment liberty interest claim**

4      As discussed in the previous claim, plaintiff has pled a

5  valid liberty interest in her standing within the community, and

6  has alleged that defendants deprived her of that interest.

7  (Compl. at 13.)  This is sufficient to plead a claim upon which

8  relief can be granted under the Fourteenth Amendment.

9      **9.   Plaintiff's defamation claim**

10     To state a claim for defamation, plaintiff must show the

11  intentional publication of a statement of fact that is false,

12  unprivileged, and has a natural tendency to injure or which

13  causes special damage.  <u>Smith v. Maldonado</u>, 72 Cal. App. 4th 637

14  (1999).  Where the words are not facially defamatory, special

15  damages must be pled to show inducement and innuendo.  <u>Babcock v.</u>

16  <u>McClatchy Newspapers,</u> 82 Cal. App. 2d 528, 537 (1947).  In

17  <u>Rothman v. Jackson</u>, the court described defamation as any

18  publication which would "expose [the] defamed person to hatred,

19

20      [6] In her opposition, plaintiff only alleges a liberty
    interest in her reputation, which she claims defendants denied
21  without due process.  However, the complaint states that
    plaintiff was deprived of due process in regards to her
22  disability retirement claim as well.  (Compl. at 12.)  While it
    is not necessary to address the issue for the purposes of
23  surviving a 12(b)(6) motion because the allegation of injury to
    plaintiff's reputation was determined to be sufficient, it should
24  be noted that plaintiff's right to disability benefits may also
    represent a valid liberty interest.  <u>Board of Regents</u>, 408 U.S.
25  at 577.  The Ninth Circuit has specifically held that the
    deprivation of disability benefits amounts to the deprivation of
26  constitutionally protected property.  <u>See</u> <u>Raditch v. United</u>
    <u>States</u>, 929 F.2d 478, 480 (9th Cir. 1991) (federal disability
27  payments); <u>Knudson v. Ellensburg</u>, 832 F.2d 1142, 1144-45 (9th
    Cir. 1987) (municipal disability payments); <u>Ostlund v. Bobb</u>, 825
28  F.2d 1371, 1373 (9th Cir. 1987) ( "Unquestionably, the claimant
    had a property interest in his disability retirement benefits.").

contempt, ridicule, or obloquy or cause [the] person to be
shunned or avoided or injured in his or her occupation, or which
charge[s] [the] person with [a] crime, suggest[s] that [the]
person has an infectious or loathsome disease or is impotent or
unchaste, tend[s] to injure [the] person in his or her business
or profession, or otherwise cause actual damage." <u>Rothman v.
Jackson</u>, 49 Cal. App. 4th 1134 (1996).  Further, the defaming
publication can be either internal or external.  <u>Kelly v. General
Telephone Co.</u>, 136 Cal. App. 3d 278, 284 (1982).

        In their papers, defendants claim that the statements
attributed to them are immune under California Civil Procedure
Code § 47 (b).  (Reply at 8-13.)  This section states:

>        A privileged publication or broadcast is one made in
>        any (1) legislative proceeding, (2) judicial
>        proceeding, (3) in any other official proceeding
>        authorized by law, or (4) in the initiation or course
>        of any other proceeding authorized by law and
>        reviewable pursuant to Chapter 2 (commencing with
>        Section 1084) of Title 1 of Part 3 of the Code of Civil
>        Procedure.

Cal. Civ. Proc. Code § 47 (b).  This privilege is absolute and
applies regardless of whether the communication was made with
malice or the intent to harm.  <u>Kashian v. Harriman,</u> 98 Cal. App.
4th 892, 912-13 (2002).  Further, the privilege extends not only
to statements made during investigations and judicial
proceedings, but also to statements made prior to any official
action or investigation.  <u>Hagberg v. California Federal Bank FSB,</u>
32 Cal. 4th 350, 362 (2004).  Thus, any communication concerning
possible wrongdoing made to an official governmental agency, like
a local police department, designed to prompt action such as an
inquiry or investigation, as well as communications made pursuant

to that inquiry or investigation, maintain an absolute privilege. <u>Passman v. Torkan</u>, 34 Cal. App. 4th 607, 617 (1995).  In <u>Shaddox v. Bertani</u>, the court stated; "California has a policy of encouraging reports concerning suspected misconduct or unfitness by law enforcement officers.  This policy is so strong that virtually no complaint, no matter how ill-founded or basely motivated, has yet been found sufficient for either criminal or civil liability."  <u>Shaddox v. Bertani</u>, 110 Cal. App. 4th 1406, 1415 (2003) (citations omitted).

In plaintiff's complaint, she sufficiently pleads a cause of action for defamation.  She alleges that the defamatory statements were published with intent to harm, that the statements were false, and that these statements directly injured plaintiff.  (Compl. at 13.)  However, all of defendants' statements are privileged under § 47 (b), and therefore plaintiff's claim fails to state a claim upon which relief can be granted.

Plaintiff claims that defendants, either directly or indirectly, made false criminal accusations to the District Attorney, and filed false civil claims regarding her conduct.  Clearly these statements fall within the § 47(b) privilege since they relate to plaintiff's alleged wrongdoing and were made within the course of an investigation or judicial proceeding.  <u>Passman v. Torkan</u>, 34 Cal. App. 4th 607, 617 (1995).  In addition, plaintiff alleges that defendants defamed her reputation as a law enforcement officer.  (Compl. at 14.)  Plaintiff has failed to show that any of these statements fell outside of criminal or civil proceedings or investigations, thus

these statements regarding her fitness as an officer also fall under the § 47(b) privilege, even if they were made with malice. <u>Kashian</u>, 98 Cal. App. 4th at 912-13.  Thus, because all of defendants' statements are privileged, plaintiff fails to state a claim, and her defamation claim is dismissed with prejudice.[7]

### 10.  Plaintiff's POBR claim

Under California Government Code § 3309.5(a), known as the "Public Safety Officers Procedural Bill of Rights Act" ("POBR"), it is "unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by [the code]."  One of the statutory protections afforded to public safety officers is to have any adverse comment regarding the officer shown to them prior to placing it in their personnel file.  Cal. Gov't Code § 3305. Specifically, § 3305 states; "No public safety officer shall have any comment adverse to his interest entered in his personnel file . . . without the public safety officer having first read and signed the instrument containing the adverse comment . . . ." Further, after being shown the adverse comment, the officer is entitled to insert a written response into the personnel file. Cal. Gov't Code § 3306.  Finally, pursuant to § 3306.5(a), the safety officer is permitted to inspect the personnel files used

---

[7] Plaintiff's claim is dismissed *with prejudice* because in its November 16, 2004 order, this court put plaintiff on notice of the deficiencies in her complaint and explained that she had "<u>one</u> further opportunity to correct" these deficiencies. (Emphasis in original).  Defendants extensively addressed the privilege in their papers and plaintiff failed to adequately respond.  Thus, because plaintiff was given an opportunity to correct the problem, but failed to do so, this court finds that to allow her to replead would be futile, and therefore dismisses with prejudice.

to determine that officer's qualifications for things such as employment, promotion, and termination, upon a reasonable request.

Here, plaintiff asserts her POBR claim against the County of Yolo, its Sheriff's Department, and the Sheriff in his official capacity. (Compl. at 14.) From the language of the statute, it is clear that liability under the POBR does not extend to the County of Yolo. Rather, plaintiff's claim can only be brought against the Sheriff's Department, and the Sheriff because he is acting as an official of the Department for purposes of liability. Thus, the County of Yolo must be dismissed as a party to this claim.

As to the allegation itself, plaintiff states, "false and unjustified documents were generated and thereafter maintained in files used for personnel purposes to which plaintiff was denied access, and [] plaintiff was never provided with the opportunity to review and rebut said false and unjustified documents maintained for personnel purposes by defendants . . . ." (Compl. at 15.) These allegations clearly demonstrate a claim under the POBR. Plaintiff claims that she never received an opportunity to review or rebut adverse comments placed in her personnel file. This states a violation of §§ 3305, 3306, and 3306.5, and therefore properly pleads a claim upon which relief can be granted.

**11. Plaintiff's ADA discrimination claim**

In order to plead a cause of action under the ADA, plaintiff must show that she is: (1) disabled within the meaning of the ADA, (2) qualified to perform the essential functions of her job,

23

and (3) suffered an adverse employment decision because of her
disability.  Snead v. Metropolitan Property & Cas. Ins. Co., 237
F.3d 1080, 1087 (2001).[8]  An employee is considered disabled if
her physical or mental impairment substantially limits one or
more of the major life activities.  Braunling v. Countrywide Home
Loans Inc., 220 F.3d 1154 (9th Cir. 2000); 42 U.S.C. §
12102(2)(A).

As to the second element, "[a]n ADA plaintiff bears the
burden of proving that she is a qualified individual with a
disability--that is, a person who, with or without reasonable
accommodation, can perform the essential functions of her job."
Cleveland v. Policy Management Sys. Corp., 526 U.S. 795 (1999)
(internal citations omitted).  There is some disagreement as to
whether a plaintiff who is seeking disability benefits can be
considered a qualified individual.  Some courts have held that a
plaintiff seeking disability benefits is barred from bringing an
ADA claim because they cannot be a "qualified individual" if they
are disabled.  Weyer v. Twentieth Century Fox Film Corp., 198
F.3d 1104, 1108 (9th Cir. 2000); Kennedy v. Applause, Inc., 90
F.3d 1477, 1481 (9th Cir. 1996).  Specifically, in Weyer, the
court states, "[o]nce an individual becomes disabled and thus
eligible for disability benefits, that individual loses the
ability to sue under a strict reading of Title I's definition of
"qualified individual with a disability" because that individual
can no longer work with or without a reasonable accommodation."

---

[8] This court assumes for the purpose of this claim that
plaintiff is alleging a violation of her rights under Title I of
the ADA.

1  <u>Weyer</u>, 198 F.3d at 1108 (citing <u>Ford v. Schering-Plough Corp.</u>,

2  145 F.3d 601 (3rd Cir. 1998)).  Taking the contrary opinion, the

3  court in <u>Johnson v. State, Oregon Dept. of Human Resources</u>

4  stated, "neither application for nor receipt of disability

5  benefits automatically bars a claimant from establishing that

6  [she] is a qualified person with a disability under the ADA."

7  <u>Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation</u>

8  <u>Div.</u>, 141 F.3d 1361, 1367 (9th Cir. 1998).  The court goes on to

9  state:

> Because of the inherent differences in the definitions
> of the term "qualified individual with a disability"
> under the ADA and the terms used in ... disability
> benefits programs ... an individual can meet both the
> eligibility requirements for receipt of disability
> benefits and the definition of a "qualified individual
> with a disability" for ADA purposes. Thus a person's
> representations that s/he is "disabled" or "totally
> disabled" for purposes of disability benefits are not
> necessarily inconsistent with his/her representations
> that s/he is a "qualified individual with a
> disability." Accordingly, they should never be an
> automatic bar to an ADA claim.

17  <u>Id.</u> (quoting EEOC Enforcement Guidance, Notice No. 915.002,

18  February 12, 1997, II.A).

19      In this case, plaintiff simply states that she is disabled,

20  and does not describe the disability in any manner.  (Compl. at

21  15.)  However, taking plaintiff's allegations as true, this court

22  makes the reasonable inference that plaintiff is disabled within

23  the meaning of the ADA.  Further, as to the third element,

24  plaintiff has alleged that she was terminated due to her

25  disability, which clearly suffices to show that she suffered an

26  adverse employment decision.  (Compl. at 7.)

27      As to whether plaintiff is a "qualified individual,"

28  plaintiff alleges that she is currently seeking disability

1  retirement benefits, which suggests that she can no longer
2  perform the essential duties of her job.  (Compl. at 12.)
3  However, following Johnson, and taking all inferences in
4  plaintiff's favor, the court must assume, at this juncture, that
5  it is possible that she satisfies the ADA's "qualified
6  individual" definition, while at the same time satisfying the
7  qualifications for disability retirement.  Johnson, 141 F.3d at
8  1367.  Therefore, plaintiff pleads a valid claim upon which
9  relief can be granted.[9]

10     **12.  Plaintiff's ADA reasonable accommodation claim**

11     In addition to forbidding disparate treatment of those with
12  disabilities, the ADA also makes it unlawful for an employer to
13  fail to provide reasonable accommodations for those with known
14  physical or mental limitations or otherwise qualified individuals
15  with disabilities, unless the accommodations would impose an
16  undue hardship on the operation of the business.  42 U.S.C. §
17  12112 (5)(A); McGary v. City of Portland, 386 F.3d 1259, 1266
18  (citing Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st
19  Cir. 2002))

20     For the purposes of the instant claim, the analysis above is
21  controlling, finding that plaintiff has stated a valid claim that
22  she was discriminated on the basis of a disability.  As to the
23  allegation that defendants failed to provide plaintiff with
24  reasonable accommodations, taking all inferences in her favor,

25  

26     [9] Nothing in this order would prevent defendants from
    bringing a motion for summary judgement seeking to show that the
    definition of "disability retirement" and "qualified individual"
27  are necessarily inconsistent.  If it can be shown that the two
    definitions cannot be reconciled, then plaintiff's ADA claim
28  could be properly dismissed.

the court must infer at this juncture that reasonable accommodations were possible, but were not effectuated.  (Compl. at 15.)  Thus, plaintiff has stated a claim upon which relief can be granted.

### 13.  Plaintiff's FEHA disability discrimination claim

As previously discussed, because California courts rely on federal discrimination cases to interpret FEHA, the analysis pertaining to the preceding ADA claim also applies to this FEHA claim.  See Brundage v. Hahn, 57 Cal. App. 4th 228, 235 (1997); Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 271 (9th Cir. 1996).  Thus, for the reasons stated above, plaintiff has stated a disability discrimination claim under FEHA.

### 14.  Plaintiff's FEHA reasonable accommodation claim

As noted above, this claim is evaluated under the same analysis as plaintiff's similar ADA claim.  Therefore, plaintiff also states a claim upon which relief can be granted under FEHA.

### 15.  Plaintiff's breach of contract claim

Under California law, in order to have an enforceable contract, plaintiff must prove the existence of an offer, acceptance, and consideration.  Soldau v. Organon Inc., 860 F.2d 355 (9th Cir. 1988).  Further, for a contract to have consideration, there must be a bargained for benefit or detriment for both parties.  Naify v. Pacific Indem. Co., 11 Cal. 2d 5 (1938).  If one party has the option of withdrawing at its pleasure without suffering any detriment, then the contract is considered illusory and is invalid.  Id.

In this case, plaintiff alleges that a valid contract was formed when County Counsel agreed to refrain from subjecting

27

plaintiff to any adverse action if she agreed to take a leave of absence. (Compl. at 18.) However, defendants allege that plaintiff was not fired because she took a leave of absence, but rather because she failed to notify defendants of the leave of absence. (Reply at 17.) This failure to notify was considered an abandonment of employment. (Sarno Decl., Ex. F) From the letter sent to plaintiff by Troy Smith, Assistant County Counsel, it is clear that pursuant to the alleged "agreement," plaintiff was required to submit a written request for the leave of absence.[10] (Sarno Decl., Ex. F.) The request was to made by plaintiff herself, and was to include doctor's notes indicating that the leave of absence was a medical necessity. <u>Id.</u> Specifically, the letter states:

> If Ms. Lancaster's treating physician determines that she is medically unable to return to work on August 20, 2003, she may submit a written request that she be placed on an unpaid leave of absence. Upon receipt, the County will agree to grant Ms. Lancaster's request for an unpaid leave of absence. . . . The County will grant this leave of absence to Ms. Lancaster on the condition that it is medically necessary; therefore, doctor's notes must substantiate all time during the leave of absence.

<u>Id.</u> This court construes this letter as an offer requiring acceptance by performance. Simply put, in order to accept the offer, plaintiff would have to provide a proper written request.

---

[10] The court properly considers the letters contained in the Sarno Declaration pursuant to <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998). <u>Parrino</u> holds that "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." <u>Id.</u> Further, the court may consider the document "even if the plaintiff's complaint does not explicitly refer to it." <u>Id.</u>

1    Here, plaintiff failed to plead that she provided a written

2  response as required, and defendants have asserted that plaintiff

3  failed to do so.  (Reply at 17.)  Plaintiff's only response

4  regarding the leave of absence consisted of a letter from her

5  counsel stating that plaintiff would accept a leave of absence if

6  defendants agreed to certain conditions.  (Sarno Decl., Ex. F.)

7  The letter included no doctor's notes.  (Id.)  In addition, the

8  letter was not a clear acceptance of the alleged offer because it

9  also recommended the alternative that plaintiff be put on an

10 involuntary leave of absence for medical reasons.  (Id.)

11 Defendants responded to this letter, stating (1) that it was not

12 their policy to place persons on involuntary leaves for medical

13 reasons, and (2) if plaintiff wanted to proceed with the offered

14 leave of absence, she would need to send a request herself, not

15 through her lawyer, and include medical certification that she

16 was unable to work.  Id.  Further, she was told that if she

17 failed to respond by September 22, 2003, she would be "considered

18 as having abandoned her employment."  (Id.)

19    Plaintiff never responded, and therefore she failed to

20 accept defendants' offer.  Since there was no acceptance, there

21 was never a valid contract which defendants could breach.[11]

22 Thus, plaintiff fails to plead a claim upon which relief can be

23

24

25
_____

26   [11] Additionally, the contract at issue lacks consideration
and therefore is illusory.  In the alleged contract, plaintiff
27 had the option of withdrawing at her pleasure without suffering
any detriment, while defendants remained bound to the alleged
28 agreement.  Thus, the contract is considered illusory and is
invalid.  Naify v. Pacific Indem. Co., 11 Cal. 2d 5 (1938).

granted, and the claim is dismissed with prejudice.[12,13]

## D. __Rule 41(b) Motion For Failure To Comply With A Court Order__

In their motion to dismiss, defendants move to dismiss the case under Federal Rule of Civil Procedure 41(b).  Pursuant to Rule 41(b), the district court may dismiss an action for failure to comply with any order of the court.  Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992).  District courts have the inherent power to control their dockets and, "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal of a case."  Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986).  Despite this authority, dismissal is a harsh penalty and therefore should only be imposed in *extreme circumstances*.  Hamilton Copper & Steel Corp. v. Primary Steel, Inc., 898 F.2d 1428, 1429 (9th Cir.

---

[12] Defendants claim in their reply that the terms and conditions of Plaintiff's employment were governed by statute, and not by contract.  On this basis, defendants allege plaintiff is unable to sue for breach of contract.  While the court in its order granting leave to amend suggested that it found merit in this argument, upon reading the second amended complaint it appears that this argument fails.  Plaintiff is not suing regarding her employment contract, but rather on the basis of an alleged contract between herself and County Counsel, whereby she was promised that no adverse action would be taken in regards to her employment if she were to take a leave of absence.  Thus, because she is not suing under her employment contract, the action is not governed by statute and a contract claim is proper, even though it is ultimately unsuccessful on the facts here.

[13] Plaintiff's claim is dismissed with prejudice because in its November 16, 2004 order, this court put plaintiff on notice of the deficiencies in her complaint and told her that she had "one further opportunity to correct" these deficiencies. (emphasis in original)  The court specifically addressed the breach of contract claim, and defendants also addressed the claim extensively in their previous motion to dismiss papers.  Thus, because plaintiff was given an opportunity to correct the problem, but failed to do so, this court finds that to allow her to replead would be futile and therefore dismisses the claim with prejudice.

1990).

On November 16, 2004, in response to defendants' first motion to dismiss and plaintiff's non-opposition, this court ordered plaintiff to amend her complaint in order to comply with Federal Rule of Civil Procedure Rule 8(a).  In the order, the court noted that it was providing plaintiff with her *last* opportunity to cure the problems with plaintiff's pleadings. Further, in a footnote, the court addressed two specific problems which needed to be remedied:

> For example, as to individual defendants Prieto and Fisch, there is merit to defendants' motion to dismiss claims arising under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the California Fair Employment and Housing Act ("FEHA"), and the Public Safety Officer's Procedural Bill of Rights ("POBR").  (Defs.' MTD at 6-7, 9-10.)  In general, these defendants may not be held personally liable under those acts.  Greenlaw v. Garrett, 59 F.3d 994 (9th Cir. 1995) (Title VII); Stern v. California State Archives, et al., 982 F. Supp. 690, 692-93 (E.D. Cal. 1997) (ADA); Reno v. Baird, 18 Cal.4th 640, 663 (1998) (FEHA); Cal. Gov. Code § 3309.5(e) (Deering, LEXIS through 2003 Sess.) (POBR). Similarly, as to plaintiff's contract claim, defendants set forth a compelling argument that the terms and conditions of civil service employment are controlled by statute, not by contract.  (Defs.' MTD at 8-9.)

(Mem. & Order, filed November 16, 2004, at 3.)

As detailed above, in the second amended complaint, plaintiff remedied the vast majority of the deficiencies in her complaint, including both the specific problems noted by the court.  While the complaint still requires many inferences to be drawn in plaintiff's favor, it nevertheless adequately *pleads* claims for all but two of the fifteen claims.[14]  Therefore, this

---

[14]   The court again emphasizes that, at this juncture,

(continued...)

31

1   court finds that plaintiff complied with its order and thus

2   denies defendants' Rule 41(b) motion to dismiss.

3   **E.   Sanctions**

4        Federal Rule of Civil Procedure 11(b)(2) states that a party

5   submitting pleadings, motions, or other papers to the court is

6   certifying to the best of their knowledge that the "claims,

7   defenses, and other legal contentions therein are warranted by

8   existing law or by a nonfrivolous argument for the extension,

9   modification, or reversal of existing law or the establishment of

10  new law . . . ."  Pursuant to Rule 11, courts have held that

11  sanctions may be awarded where a pleading is frivolous, filed for

12  an improper purpose, lacks evidentiary support regarding

13  allegations and/or factual contentions, or is unwarranted under

14  existing law.  G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096,

15  1109-11 (9th Cir. 2003).  The decision to levy sanctions is

16  within the discretion of the court, and their imposition should

17  only occur in order to deter and punish improper conduct.  Fed.

18  R. Civ. P. 11(c); Dahl v. City of Huntington Beach, 84 F.3d 363,

19  367 (9th Cir. 1996).  In evaluating whether to issue sanctions,

20  the court must look at whether the conduct was "reasonable," such

21  that it meets the standard of a "competent attorney admitted to

22  practice before the District Court."  Zaldivar v. City of Los

23  Angeles, 780 F.2d 823, 830 (9th Cir. 1986).

24

25

26        [14](...continued)
    plaintiff has adequately pled the majority of her claims for
27  relief.  However, the court notes that it appears from the
    arguments advanced on the instant motion that many of plaintiff's
28  claims may be subject to a Rule 56 motion.

1       In the instant case, the court finds that neither

2   plaintiff's complaint, nor her conduct, warrants the issuance of

3   sanctions.  As previously discussed, all but two of the fifteen

4   claims alleged in the second amended complaint survive

5   defendants' motion to dismiss, and neither of those which fail

6   can be considered frivolous.  Further, even though in some

7   instances plaintiff pled only minimal details regarding her

8   claims, such is permitted by the federal rules, and this fact

9   alone does not suggest that there is a lack of evidentiary

10  support for plaintiff's claims.  Moreover, this court's order

11  granting leave to amend did not impose a heightened pleading

12  standard upon plaintiff, and the resulting second amended

13  complaint generally complied with the pleading requirements under

14  Federal Rule of Civil Procedure 8(a).  Thus, the court finds that

15  plaintiff's (and her attorney's) actions were reasonable, and

16  therefore not deserving of sanctions.

17                          **CONCLUSION**

18      In the instant case, plaintiff has properly pled this

19  court's subject matter jurisdiction over her claims.  Further,

20  plaintiff properly pled thirteen of her claims, and the remaining

21  two claims, albeit inadequately pled, were not frivolous.

22  Therefore, defendants' motion to dismiss under 12(b)(1) and 41(b)

23  is DENIED, defendants' 12(b)(6) motion is DENIED in part and

24  GRANTED in part, and defendants' motion for sanctions is DENIED.

25      IT IS SO ORDERED.

26  DATED: April 20, 2005.

27                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL JR.
28                          United States District Judge

                                33