UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RENEE ODETTE LANCASTER,

                    NO. CIV. S-03-2342 FCD DAD

      Plaintiff,

   v.                   MEMORANDUM AND ORDER

COUNTY OF YOLO; COUNTY
OF YOLO SHERIFF'S DEPARTMENT;
et al.,

      Defendants.

----oo0oo----

This matter is before the court on (1) a motion for summary judgment, or alternatively, partial summary judgment brought by defendants County of Yolo (the "County"), County of Yolo Sheriff's Department (the "Department"), and Sheriff Ed Prieto ("Prieto") and (2) a motion for summary judgment, or alternatively, partial summary judgment brought by defendant Sergeant Ken Fisch ("Fisch").[1]  Defendants also move to exclude,

---

[1]    The court renders its decision with respect to both motions in this order as the essential facts, claims and controlling law are the same for both motions.  Where appropriate, the court refers to all moving defendants collectively as "defendants."

1

in a motion entitled a "motion in limine to exclude expert

testimony," the testimony of plaintiff's experts Wendell Phillips

("Phillips") and Timothy Twomey ("Twomey") on the grounds their

expert reports were incomplete and/or their testimony is

otherwise inadmissible as unreliable or not a proper subject of

expert testimony. (Docket #85-13.) The court considers motions

in limine at the time of trial not pursuant to motions for

summary judgment (see Amended Status (Pretrial Scheduling) Order,

filed Nov. 15, 2006); however, for purposes of the instant

motions, the court construes defendants' motion in limine as

objections to the testimony of Phillips, who filed a declaration

in support of plaintiff Renee Lancaster's ("plaintiff")

opposition. See n.5 infra. As to Twomey, the court defers

ruling on defendants' in limine motion as plaintiff does not rely

on Twomey's testimony in response to defendants' motions.[2]

By their motions for summary judgment, defendants seek

adjudication in their favor on plaintiff's "second amended and

supplemental complaint," alleging claims for (1) gender

discrimination, under a theory of hostile work environment

harassment, pursuant to Title VII of the Civil Rights Act of 1964

("Title VII") and state law under the Fair Employment and Housing

---

[2]    Plaintiff filed a counter-motion in limine to exclude
defendants' experts' testimony on the ground defendants'
disclosures were untimely. (Docket #106.) The court summarily
DENIES plaintiff's counter-motion to exclude. While plaintiff
correctly points out that the disclosures were due on Friday,
April 13, 2007, defendants filed their disclosures on Monday,
April 16, 2007, just two days later. Defendants explain that the
delay was due to their mis-calendaring the court's deadline and
because they received one expert report belatedly because of a
downed server (Docket #117-5). Plaintiff, however, has made no
showing that this brief delay prejudiced her, and as such, she is
not entitled to relief. Fed. R. Civ. P. 37(c)(1).

Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.;* (2) unlawful

retaliation in violation of Title VII, FEHA and the First

Amendment (pursuant to 42 U.S.C. § 1983 ["Section 1983"]);

(3) disability discrimination and unlawful failure to reasonably

accommodate a disability in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and FEHA;

(4) violation of plaintiff's Fourteenth Amendment equal

protection rights (pursuant to Section 1983); (5) violation of

plaintiff's Fourteenth Amendment procedural due process rights

(pursuant to Section 1983); and (6) violation of California's

Public Safety Officers Procedural Bill of Rights Act ("POBR"),

Cal. Gov't Code § 3300 *et seq.* (Sec. Am. Compl., filed Nov. 29,

2004 ["Compl.].)[3]

   Plaintiff opposes the motions, arguing triable issues of

fact exist as to each of her claims.[4]

   For the reasons set forth below, the court GRANTS

defendants' motions for summary judgment as to plaintiff's

federal claims, and as to plaintiff's remaining state law claim

under the POBR, the court declines to exercise supplemental

jurisdiction over that claim.[5]

_____

   [3]   Plaintiff also alleged claims under state law for
defamation and breach of contract; those claims were dismissed
with prejudice by the court's order of April 21, 2005 (Docket
#40), granting defendants' Federal Rule of Civil Procedure, Rule
12(b)(6) motion.

   [4]   Plaintiff filed a joint opposition to defendants'
motions for summary judgment (Docket #92).

   [5]   The court finds that oral argument will not be of
material assistance in these matters.  E.D. Cal. L.R. 78-230(h).
Accordingly, it submits the matters on the briefs and VACATES the
hearing set for July 13, 2007.

BACKGROUND[6]

In early 1999,[7] a proposal to start a K-9 unit in the Department was made by Sheriff's Deputy Brandon Simmons ("Simmons"). (Defs.' Reply to Pl.'s Resp. [Opp'n] to Joint Stmt. of Undisputed Facts ["RUF"], filed June 22, 2007 [Docket #120], ¶ 13.) Prieto accepted the proposal, and in June 1999, the County contracted with plaintiff, who was a dog breeder and trainer, for

---

[6] Unless otherwise noted, the court finds the following facts undisputed. In her response to defendants' Joint Statement of Undisputed Facts (Docket #95), plaintiff disputes almost all of defendants' 186 statements of fact. The court acknowledges that in some respects plaintiff has done so because defendants have characterized the evidence or made legal arguments as *purported* "statements of fact." However, in the vast majority of instances, plaintiff disputes facts, citing inadmissible or immaterial evidence, and as such, the court treats the subject fact as undisputed. Where plaintiff properly disputes defendants' facts or proffers admissible evidence via her Statement of Additional Material (Disputed) Facts (Docket #111 and Defs.' Reply thereto [Docket #119] [hereinafter "PDF"]), the court recounts her version of the facts.

In their separately filed "motion in limine" as well as their reply, defendants object to nearly all of plaintiff's proffered evidence and specifically move to strike certain evidence (Defs.' Mtn. to Strike & Objs., filed June 22, 2007 [Docket #117]). Much of the evidence that defendants object to is immaterial to the court's analysis of the motions. However, to the extent that the evidence is relevant and discussed herein, the court has either ruled on defendants' objection where pertinent or declined to do so because even considering the evidence, it fails to raise a triable issue of fact sufficient for plaintiff to withstand summary judgment.

[7] Defendants raise in their papers certain facts pertaining to plaintiff's prior employment with the City of Roseville's Police Department. Said facts are irrelevant to plaintiff's instant claims against the County of Yolo and its employees, and therefore, the court does not discuss these facts herein. In various other respects, defendants *and* plaintiff have raised facts that are irrelevant to the adjudication of plaintiff's claims. Those facts and the parties' disputes about them have been disregarded by the court. In the court's view, only those facts described in this background section are relevant to plaintiff's claims and necessary to decide these motions.

4

the purchase of a dog and handler training for Simmons.  (RUF ¶ 15.)

On or about August 1999, plaintiff interviewed for a sheriff's deputy position in the Department and was ultimately offered a position by Prieto.  (RUF ¶ 8.)   In September 1999, the Department again contracted with plaintiff for the purchase of a second dog and training for a second canine handler.  (RUF ¶ 16.) Plaintiff was still under contract to provide training for the two K-9 teams when she began working for the Department as a sheriff's deputy in October 1999.  (RUF ¶ 17.)

As with all new sheriff's deputies, plaintiff's first assignment was in Court Services.  (RUF ¶ 18.)   On January 4, 2000, Fisch wrote a memo to his supervisors recommending that in light of plaintiff's "special skills and experience" as a canine handler and trainer she should be placed in a role as a canine handler as soon as possible, and that she should be allowed to use her canine at her current assignment in Court Services.  (RUF ¶ 20.)   On February 25, 2000, Prieto assigned plaintiff the collateral duty of a canine handler in her assignment in Court Services.  (RUF ¶ 21.)   Thereafter, in September 2000, plaintiff transferred from Court Services to Field Operations so she could use a canine on patrol.  (RUF ¶ 22.)

After transferring to patrol, plaintiff was at times supervised by Fisch.  (RUF ¶ 37.)   In late 2002, Fisch received reports from other deputies that plaintiff was, among other things, slow responding to calls, going home prior to the end of her shift, or hanging out at a friend's house when she should be patrolling.  (RUF ¶ 44, 46.)  As a result of this latter report,

5

on November 17, 2002, during plaintiff's shift, Fisch drove to
the location of plaintiff's friend house and parked up the
street.  (RUF ¶ 54.)  Shortly thereafter, plaintiff arrived at
the house and went inside.  (RUF ¶ 55.)  Plaintiff did not notify
dispatch of her location.  (RUF ¶ 61.)  After an hour and twenty
minutes, a call for back up came in and plaintiff left.  (RUF ¶
56.)  Fisch did not follow her.  (Fisch Decl., filed April 27,
2007, ¶ 15.)  While plaintiff was inside the house, she ran a
license plate check.  (RUF ¶ 57.)  The plates belonged to a truck
that was parked in the driveway of plaintiff's friend's house.
(Id.)

     After this incident, in December 2002, Fisch sent an e-mail
to Lt. Robin Faille ("Faille") indicating that he was monitoring
plaintiff's activities to determine whether the deputies'
complaints were true.  (RUF ¶ 62.)  Faille instructed Fisch to
immediately confront plaintiff about the complaints.  (RUF ¶ 63.)
Fisch did not do so.  (RUF ¶ 64.)

     Thereafter, in the early morning of January 1, 2003, at
approximately 1:00 a.m. (at the time, plaintiff's work shift
ended at 1:30 a.m.), Fisch, who was also on duty at the time, sat
in a marked vehicle with his lights on at a stop sign at an
intersection near plaintiff's house, in order, according to
Fisch, to see if plaintiff was going home early from her shift
and to dissuade her from doing so.  (RUF ¶s 44-45, 66.)  Fisch's
wife, Carol, was with him in the vehicle.  (RUF ¶ 66.)  As
plaintiff drove down her street, Fisch contends she gave dispatch
a location a few miles away.  (RUF ¶ 68.)  At that same time,
Fisch asserts a "man-down" call came in and both he and plaintiff

left to respond to the call.  (RUF ¶ 69.)  Plaintiff disputes that she gave a different location to dispatch or that she received a "man-down" call for assistance.  (RUF ¶s 68-69.) According to plaintiff, as she approached her residence, she observed a "blacked-out" vehicle parked by the side of the road near the entrance to her home.  (PDF ¶ 69.)  As she approached the car, she asserts that it accelerated away at a high rate of speed, running a stop sign.  (Id.)  She followed the car, believing the driver could be impaired, but as she got close, she realized the car was a Department patrol supervisor's vehicle, a Chevrolet Tahoe, which she later learned was being operated by Fisch.  (PDF ¶ 71.)

On January 2, 2003, plaintiff complained to Faille about Fisch following her and Fisch's alleged conduct toward other women deputies in the Department, including alleged sexual harassment of other women employees and extra-marital affairs with women employees.  (RUF ¶ 70; PDF ¶ 72.)  Plaintiff claimed Fisch was "stalking" her but she did not complain of sexual harassment specifically.  (Id.)  Plaintiff admits Fisch never made any physical advances towards her, never asked her out on a date, never tried to hug or kiss her, and that she had no reason to believe he was romantically interested in her.  (RUF ¶ 71.) Faille advised Fisch not to "stalk" plaintiff and instructed him to confront plaintiff about the complaints against her and to explain why he had checked up on her.  (RUF ¶ 72.)  On January 7, 2003, Fisch tried to give plaintiff a letter of instruction regarding her failure to stay on patrol until the end of her shift and failure to communicate with dispatch when leaving her

car.  (RUF ¶ 73.)  However, plaintiff refused to talk to Fisch.
(RUF ¶ 74.)  She thereafter took several days of stress leave
returning to work only to provide K-9 training until the unit was
disbanded.  (RUF ¶ 77.)

Plaintiff also complained to Prieto about Fisch's behavior;
Prieto asserts, however, that she did not complain about Fisch
"stalking her" or otherwise harassing her in any fashion but
rather, she complained about his attempt to give her the letter
of instruction.  (RUF ¶ 75.)  Because Prieto did not believe
plaintiff was making a complaint of harassment or discrimination,
no formal "Title VII" investigation was performed.  (RUF ¶ 76.)
Plaintiff agrees that no formal investigation was performed but
claims that her conversations with Faille and Prieto were
complaints of sexual harassment and gender discrimination which
warranted a formal investigation.  (RUF ¶ 76; PDF, ¶s 80-81, 96-
97.)[8]

Faille gave Fisch a letter of instruction because he did not
follow Faille's direction in December 2002 to confront plaintiff
about the complaints against her, and Faille did not authorize
the January 7 letter of instruction to plaintiff.  (Faille Decl.,

---

[8]   Plaintiff submits evidence to argue that she was an
employee of good-standing and considerable accolade during her
employment with the County up until the events of January 2,
2003.  (PDF ¶s 6-27.)  At that point, plaintiff contends once she
complained of sexual harassment and gender discrimination, her
work environment changed dramatically for the worse.  Defendants
dispute her allegations, submitting evidence to support their
contentions that plaintiff, throughout her employment with the
County, had difficulty with supervisors and co-workers and was
consistently evaluated as "needing improvement."  (RUF ¶s 23, 25-
26, 30-32.)  The court does not describe these facts herein as,
for the reasons set forth below, the parties' disputes over these
issues are not pertinent to resolution of the motions.

filed April 27, 2007, ¶ 14.)

During this same period of time, December 2002 to January 2003, Prieto communicated with and ultimately hired Bill Carlson, a former CHP Deputy Commissioner who operated a private investigation and consulting business, to do an assessment of the internal working environment of the Department, specifically in regard to issues of trust, communications, morale, and any perceived hostility or harassment.  (RUF ¶s 81-84.)  Prieto maintains he did not instruct Carlson to investigate plaintiff or any specific allegations by or against her.  (RUF ¶ 87.)

Plaintiff contends, to the contrary, that at the time, she was led to believe by Prieto that Carlson was conducting an "EEOC" investigation into her claims of harassment.  (PDF ¶ 110.) She now believes the Carlson investigation was performed in order to gather evidence against her--evidence which could be used by the County in defending against her charges of harassment and discrimination.  (PDF ¶ 116.)  Plaintiff was the first person interviewed by Carlson and was interviewed longer than any other employee, and plaintiff contends her interview was conducted before Carlson was officially hired to perform the so-called "morale assessment."  (PDF ¶ 117.)  Defendants disagree.  They maintain Carlson was officially hired in December 2002, and that on the day of plaintiff's interview, January 15, 2003, Prieto and others met with Carlson to simply discuss the logistics of the assessment.  Defendants assert plaintiff was interviewed first, on January 15, because she happened to be in the office that day and Carlson decided to take the opportunity to meet with her then.  (Carlson Supp. Decl., ¶s 1-4.)

9

At the time Carlson performed his investigation, interviewing approximately 100 employees, Prieto did not believe plaintiff had made a complaint of sexual harassment or gender discrimination.  (RUF ¶ 98.)  On February 11, 2003, Carlson submitted a report of his findings to Prieto. [9]  (RUF ¶ 86.)  The report was intended for Prieto's own internal review of his department, specifically related to morale issues, and it was not to be used for any personnel purposes related to any of the individuals interviewed.  (Carlson Supp. Decl., filed June 22, 2007, ¶ 16.)  Prieto claims he first became aware that plaintiff complained of sexual harassment and discrimination by Fisch when he received a letter from plaintiff's attorney on February 20, 2003.  (RUF ¶ 162.)

On February 7, 2003, plaintiff saw Dr. Michael Erickson ("Erickson") for counseling and therapy for stress and anxiety and was diagnosed with an adjustment disorder.  (RUF ¶ 99.)  On

---

[9]  Plaintiff objects to defendants' reliance on Carlson's underlying findings, arguing his report violates the POBR.  The court need not rule on said objection because as set forth below, the court does not base its decision on any of Carlson's findings.  The allegations of misconduct by plaintiff's co-workers' reported to Carlson about plaintiff are not relevant to the adjudication of the instant motions.  Said allegations did not form the basis for defendants' termination of plaintiff's employment and as such, they are not relevant to the resolution of plaintiff's claims.

Additionally, Carlson's report, consisting of his "internal assessment summary," "recommendations," and notes of the employee interviews (Ex. A to Carlson Decl., filed April 27, 2007), is inadmissible as hearsay.  Fed. R. Evid. 801, 802.  At times, both defendants and plaintiff seek to rely on Carlson's report for the truth of the matters asserted therein (see RUF ¶s 88-97); however, they each fail to identify an applicable exception to the hearsay rule, nor is the court aware of any, which would permit the report's admission into evidence.  Fed. R. Evid. 803.

March 5, 2003, plaintiff filed a workers' compensation claim asserting injury to her psyche due to hostile work environment harassment.  (RUF ¶ 78.)   Plaintiff called in sick for several days thereafter and then submitted successive notes from Erickson taking her off work from March 9, 2003 through June 30, 2003. (RUF ¶ 100.)  On June 13, 2003, the County notified plaintiff that she could remain on medically necessary FMLA-leave, pursuant to County policy, until August 16, 2003.  (RUF ¶ 101.)

On March 26, 2003, the Department received a call from a woman who wanted to file a citizen's complaint against plaintiff for stealing a purebred German Shepard.  The complainant was informed that because the complaint did not involve conduct by plaintiff in the course of her employment as a sheriff's deputy, the matter would not be investigated by internal affairs. However, as with all such complaints, Fisch assigned a deputy to take the report, and the report was forwarded to the District Attorney's office.  Plaintiff was not arrested and no criminal charges were filed against her.  (RUF ¶s 34-36, 164, 170.)

Plaintiff's workers' compensation claim was denied by the third party administrator that handles the County's claims, who found that there was no medical reason why plaintiff could not return to work.  (RUF ¶ 103.)[10]

On August 8, 2003, the County notified plaintiff by mail that her twelve weeks of FMLA-leave would expire on August 16, 2003, and if she was unable to return to work the County could no longer hold her position open.  (RUF ¶ 105.)  The County stated

---

[10]    It is not clear from the parties' papers when this denial was made.

11

that if she was released to work within a reasonable time after August 16, the County would try to place her in another position. (Id.)  On August 19, 2003, the County notified plaintiff her FMLA leave had expired but she could request to be placed on an unpaid leave of absence for up to a year, until March 9, 2004, upon timely submission of medical substantiation for the continued leave.  (RUF ¶ 106.)  Plaintiff was given contact information for the County personnel analyst to whom the written request needed to be made.  (RUF ¶ 107.)  She was advised that the failure to submit a request for a leave of absence would result in a finding of unauthorized absence from duty.  (Id.)

On August 20, 2003, plaintiff's counsel wrote to the County personnel analyst, advising that plaintiff would accept a leave of absence as long as the leave would not prejudice her right to pay under Labor Code § 4850, upon a favorable ruling by the Workers' Compensation Appeals Board, and to damages should she be successful in her civil rights action.  The letter stated that plaintiff's doctor had not given her a specific return to work date.  (Ex. C to Sarno Decl., filed April 27, 2007, at 17.)[11]

The County believed counsel's letter did not comply with its request that plaintiff, personally, submit the written request with supporting documentation from her doctor, and thus, on September 13, 2003, the County informed plaintiff that she had 10

---

[11]   The court cites to the arbitrator's decision regarding this fact as the parties do not appear to have submitted this letter.  While the arbitrator's decision is not admissible for the reasons set forth below, defendants do not object to the chronology of events described in the decision, and thus, the court cites to the decision only for purposes of providing a reference for this fact.

days, until September 22, to make the appropriate request for a
leave of absence without pay or she would be deemed absent from
duty, unauthorized.  (RUF ¶ 108.)  Plaintiff did not respond and
the County considered her to have abandoned her employment.  (RUF
¶ 110.)  Plaintiff was sent a Notice of Proposed Termination on
September 23, 2003.  (RUF ¶ 111.)  On September 26, 2003,
plaintiff's counsel wrote to Prieto advising him that plaintiff
was not "abandoning her job," she was under a doctor's care, and
she would accept a leave of absence.  (Ex. C to Sarno Decl. at 17
[see n.11 supra].)  On October 10, 2003, plaintiff received a
hearing before Prieto to challenge the termination.  (RUF ¶ 111.)
On October 14, 2003, Prieto upheld the proposed termination.
(RUF ¶ 113.)

Plaintiff appealed the decision.  In March and April 2006,
an administrative hearing was held at the Yolo County
Administrative Offices before Hearing Officer Joe Henderson
("Henderson").  (RUF ¶ 114.)  Henderson granted plaintiff's
appeal, finding that the County did not show cause for the
disciplinary termination of plaintiff.  (RUF ¶ 115.)  Henderson
found the County incorrectly deemed plaintiff to have abandoned
her employment; he found plaintiff's counsel's letter of
September 26, 2003 sufficient to meet the County Code's
provisions to request an unpaid leave of absence.  (Ex. C to
Sarno Decl. at 23.)  Absent proof of an active, accepted workers'
compensation claim effective on or before September 25, 2004,
plaintiff was given 30 days to obtain medical clearance and be
reinstated, without back pay or benefits, or she would be deemed
to have voluntarily quit.  (Id. at 24-25.)

13

1    Plaintiff timely provided the requisite medical clearance
2   and returned to work as a sheriff's deputy in October 2006.  (RUF
3   ¶ 123.)

4                              **STANDARD**

5    The Federal Rules of Civil Procedure provide for summary
6   judgment where "the pleadings, depositions, answers to
7   interrogatories, and admissions on file, together with the
8   affidavits, if any, show that there is no genuine issue as to any
9   material fact."  Fed. R. Civ. P. 56(c); see California v.
10  Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must
11  be viewed in the light most favorable to the nonmoving party.
12  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en
13  banc).

14   The moving party bears the initial burden of demonstrating
15  the absence of a genuine issue of fact.  See Celotex Corp. v.
16  Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to
17  meet this burden, "the nonmoving party has no obligation to
18  produce anything, even if the nonmoving party would have the
19  ultimate burden of persuasion at trial."  Nissan Fire & Marine
20  Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).
21  However, if the nonmoving party has the burden of proof at trial,
22  the moving party only needs to show "that there is an absence of
23  evidence to support the nonmoving party's case."  Celotex Corp.,
24  477 U.S. at 325.

25   Once the moving party has met its burden of proof, the
26  nonmoving party must produce evidence on which a reasonable trier
27  of fact could find in its favor viewing the record as a whole in
28  light of the evidentiary burden the law places on that party.

14

See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

**1.   Gender Discrimination/Hostile Work Environment Harassment – Title VII and FEHA**[12]

Preliminarily, the court notes that defendants County, Department and Prieto moved for summary judgment both as to claims of gender discrimination and sexual harassment under a hostile work environment theory (as a form of gender discrimination).[13]  See Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  However, plaintiff does not separately allege a straight, gender discrimination claim, based on a failure to promote theory or otherwise.  (Compl., filed Nov. 29, 2004.) Indeed, in her opposition to the motions, plaintiff discusses only a gender discrimination claim based on a hostile work environment/sexual harassment theory.  This is consistent with her complaint, wherein she alleges only that she was "stalked and harassed due to her gender."  (Compl., ¶ 37.)  While

---

[12]   Because California law under FEHA mirrors federal law under Title VII and the ADA, federal cases are instructive and the claims may be similarly analyzed.  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996); Mendoza v. Town of Ross, 128 Cal. App. 4th 625, 635 (2005).

[13]   Defendant Fisch moved only with respect to a claim of sexual harassment.

plaintiff makes some vague references to "gender discrimination,"
generally, in her complaint, she fails to formulate any theory of
gender discrimination, other than a claim of alleged workplace
harassment on the basis of her gender.  (<u>See</u> Compl., generally.)
As such, the court does not consider herein, defendants' motion
as it is directed at a claim of purported gender discrimination
for failure to promote or otherwise.  (Defs.' Mem. of P&A, filed
April 27, 2007 [Docket #85], at 7-11; Reply, filed June 22, 2007
[Docket #117-2], at 2-6.)  The court finds that plaintiff has not
alleged such a claim, or alternatively, even if she had, she
fails to oppose the motion on that issue, and defendants' motion
would be properly granted on that basis (E.D. Cal. L.R. 78-
230(c)).

    As to plaintiff's sexual harassment claim, to establish a
*prima facie* case of hostile work environment harassment under
Title VII (or FEHA), plaintiff must raise a triable issue of fact
as to whether

> (1) she was subjected to verbal or physical conduct
> because of her [gender], (2) the conduct was unwelcome,
> and (3) the conduct was sufficiently severe or
> pervasive to alter the conditions of plaintiff's
> employment and create an abusive working environment.

<u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 798 (9th Cir. 2003)
(quoting <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 817 (9th Cir.
2002).  Title VII is not a general civility code.  <u>Id.</u> (citing
<u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).
"Simple teasing, offhand comments, and isolated incidents (unless
extremely serious) will not amount to discriminatory changes in
the terms or conditions of employment."  <u>Faragher</u>, 524 U.S. at
788.  Rather, "[a] hostile work environment claim involves a

16

workplace atmosphere so discriminatory and abusive that it
unreasonably interferes with the job performance of those
harassed." <u>Brooks</u>, 229 F.3d at 923.   Therefore, in order to
survive a motion for summary judgment, plaintiff must present
evidence that her "workplace [was] permeated with discriminatory
intimidation . . . that [was] sufficiently severe or pervasive to
alter the conditions of his employment and create an abusive
working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S.
17, 21 (1993); <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App.
3d 590, 608 (1989).   Further, "[t]he working environment must
both subjectively and objectively be perceived as abusive."
<u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1527 (9th Cir. 1995)
(citing <u>Harris</u>, 510 U.S. at 21-22).

   The Supreme Court has warned that evidence of a hostile work
environment should not be viewed too narrowly; "[T]he objective
severity of harassment should be judged from the perspective of a
reasonable person in the plaintiff's position, considering 'all
the circumstances.'"   <u>Oncale v. Sundowner Offshore Servs., Inc.</u>,
523 U.S. 75, 81 (1998) (citing <u>Harris</u>, 510 U.S. at 23).   Such
circumstances "may include the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."
<u>Beyda v. City of Los Angeles</u>, 65 Cal. App. 4th 511, 517 (1998)
(quoting <u>Harris</u>, 510 U.S. at 23).   "The plaintiff must prove that
the defendant's conduct would have interfered with a reasonable
employee's work performance and would have seriously affected the
psychological well-being of a reasonable employee and that [she]

17

was actually offended." Id. (quoting Fisher, 214 Cal. App. 3d at 609-10). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991) (citing King v. Board of Regents of Univ. of Wisconsin Sys., 898 F.2d 533, 537 (7th Cir. 1990)).

Here, plaintiff bases this claim on (1) Fisch's alleged stalking of her; (2) Fisch's alleged harassment of other women employees in the Department; and (3) rumored consensual relationships or affairs between other employees in the Department.[14]

Regarding Fisch's alleged stalking of plaintiff, defendants contend that his actions were not stalking but rather proper "personnel activity" as plaintiff's supervisor, and as such, the conduct cannot give rise to a harassment claim. (See supra n. 13.)  Whether Fisch's conduct was proper supervisory/personnel activity is disputed.  Contrary to defendants' position, as articulated in the declarations of Faille and Fisch submitted in support of the motions, plaintiff emphasizes the evidence that

---

[14]     To the extent plaintiff attempts to base this claim on other alleged actions of defendants, such as their evaluations of her work performance, comments in her performance evaluations, the decision to discontinue K-9 patrols, her termination or any other personnel management activity, her harassment claim fails. "Unlike other forms of discrimination, harassment or 'hostile work environment' claims concern actions 'outside the scope of job duties which are not of a type necessary to business and personnel management.'"  Velente-Hook v. Eastern Plumas Health Care, 368 F. Supp. 2d 1084, 1102-03 (E.D. Cal. 2005).  Personnel management decisions "may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by [Title VII and FEHA] are those for discrimination, not harassment."  Reno v. Baird, 18 Cal. 4th 640, 647 (1998). For the reasons stated above, plaintiff has not alleged such *discrimination* claims.

Fisch did not follow Faille's initial directive to confront
plaintiff regarding the complaints against her, rather than
follow her, and Fisch was later given a letter of instruction,
reprimanding him for disobeying Faille's order. (Faille Decl., ¶
14.) Faille also wrote in his notes, following his conversation
with plaintiff on January 2, 2003, that he directed Fisch to "not
stalk" plaintiff. (RUF ¶ 72.) Thus, based on this evidence,
defendants are not entitled to summary judgment on this theory.

However, defendants are entitled to summary judgment, with
respect to this basis for plaintiff's claim, for a different
reason. With regard to this conduct, even assuming plaintiff's
version of the facts as true, said conduct was not sufficiently
severe and pervasive. Fisch engaged in the conduct on *two*
occasions only,[15] and the conduct did not disrupt plaintiff's
work in any respect; plaintiff went about her normal work on
these occasions. <u>Fuller</u>, 47 F.3d at 1527. Indeed, as to the
first incident, on November 17, 2002, plaintiff only became aware
of Fisch's actions *after-the-fact*. (RUF ¶ 54.) Moreover,
considering the circumstances of these incidents, which were not
frequent, severe, or physically threatening, a reasonable
employee would not have felt harassed. <u>Oncale</u>, 523 U.S. at 81;
<u>Beyada</u>, 65 Cal. 4th at 517. Accordingly, Fisch's conduct, as a
matter of law, cannot serve as a basis for a sexual harassment

_____

[15] The court does not consider as evidence plaintiff's
blanket statement in her declaration that she "observed Fisch
following her while she was on patrol 'at least a half dozen
times.'" (Pl.'s Decl., ¶ 147.) Plaintiff gives no details
regarding these alleged other incidents, and as such, her
conclusory assertion is not properly considered as evidence to
support her claims.

claim.

Next, as to plaintiff's allegations that Fisch sexually harassed other women employees in the Department, plaintiff has no admissible evidence of such conduct and therefore cannot withstand summary judgment.  See <u>Minor v. Ivy Tech State College</u>, 174 F.3d 855, 856-57 (7th Cir. 1999) (finding the plaintiff's testimony, regarding statements made to her by her supervisor's secretary concerning her supervisor's alleged "casing" of employees' houses and "rumors she heard that [her supervisor] had had sexual relationships with members of [the defendant's] staff" inadmissible hearsay).  Moreover, even if she did have such evidence, plaintiff cannot establish a sexual harassment claim based on said conduct as she fails to demonstrate how the conduct affected *her* work environment.  <u>Juarrieta v. Portland Public Schools</u>, 2001 U.S. Dist. LEXIS 23515, *25-37 (D. Or. 2001) (emphasizing that the focus is the *plaintiff's* workplace and the *plaintiff's* conditions of employment and rejecting hostile work environment claim where the plaintiff's only evidence was an alleged history, with no supporting affidavits, of bullying female coworkers and rumors that the harasser was a womanizer with a reputation for soliciting sexual favors from subordinates).

By her own declaration only, plaintiff maintains that Fisch was a "letch," who harassed other women in the department, including sheriff's deputy Mari Alvarez ("Alvarez") and civilian employee Julia Medina ("Medina").  In that regard, plaintiff reports in her declaration various alleged statements made to her by Alvarez, wherein she complained of harassment by Fisch, and

various rumors she heard regarding Fisch's conduct toward Medina. (See e.g. Pl.'s Decl., filed May 23, 2007, ¶s 168-177, 210.) Said evidence is clearly inadmissible hearsay, which the court may not consider on summary judgment.  Fed. R. Evid. 801, 803; Fed. R. Civ. P. 56(e); Minor, 174 F.3d at 856-57.

Moreover, even if considered, said conduct would not give rise to an actionable claim of harassment; none of the conduct occurred in plaintiff's presence, nor was it directed at her. EEOC v. Tamayo, 2006 U.S. Dist. LEXIS 49011, *22 (E.D. Cal. 2006) (recognizing that in a sexual harassment case, a plaintiff cannot testify about other acts of alleged harassment against other persons unless the plaintiff presents admissible evidence that she witnessed the alleged harassment or that the alleged incidents personally affected her employment); accord Biggs v. The Nicewonger Co., Inc., 897 F. Supp. 483, 485 (D. Or. 1995); Lyle v. Warner Brothers Television Produtions, 38 Cal. 4th 264, 284-86 (2006).  Indeed, plaintiff admits Fisch never tried to date, hug or kiss her and never made any physical advances towards her (RUF ¶ 151).  See Bakerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995) (declining to find supervisor was a sexual harasser where "he never touched plaintiff," "did not invite her, explicitly or implicitly to have sex with him or go out on a date with him," "he made no threats," and he "never said anything to [plaintiff] that could not be repeated on prime time television").  Plaintiff's claim on this basis likewise fails as a matter of law.

Finally, as to plaintiff's reliance on alleged consensual relationships and/or affairs between other employees in the

department, plaintiff also does not have admissible evidence of
such conduct.  Once again, her declaration is not based on
personal knowledge but rather hearsay statements.[16]  Morever,
even if said evidence was admissible, plaintiff has proffered no
evidence the conduct affected her employment in any way, nor
would a reasonable employee be affected by such conduct.  A "co-
worker's romantic involvement with a supervisor does not by
itself create a hostile work environment."  <u>Candelore v. Clark
County Sanitation District</u>, 975 F.2d 588, 590 (9th Cir. 1992).
In <u>Candelore</u>, the plaintiff alleged sexual harassment and gender
discrimination based upon a co-worker's romantic affair with one
or more of her supervisors but the court found she failed to
state a *prima facie* case under Title VII.  The court held that to
state such a claim, the plaintiff must demonstrate that she was
denied "employment opportunities or benefits [that] were extended
to less qualified female co-workers who responded to the sexual
overtures from work supervisors" or that she "was denied . . .
benefits because she spurned a supervisor's sexual advances."
<u>Id.</u>[17]

---

[16]    Plaintiff describes that (1) Alvarez told her that she
and Sgt. Al Williams were having an affair; (2) retired Sergeant
Laura Landeros told her she observed former Chief Coroner Mary
Coompin-Williams kissing Fisch; and (3) Prieto was seen by
someone holding hands with his "girlfriend" at Starbucks.  (Pl.'s
Decl., ¶s 67, 69, 155, 182-183.)

[17]    <u>See also</u> <u>Alaniz v. Peppercorn</u>, 2007 Dist. LEXIS 32694
(E.D. Cal. 2007) (declining to find the plaintiff had been
sexually harassed or discriminated against by her supervisor's
extramartial affair with a co-worker where there was no evidence
of "public fondling" and no allegation that the paramour abused
any other employee or that the relationship was flaunted).

22

The California Supreme Court found similarly in <u>Miller v.</u>
<u>Dep't of Corrections</u>, 36 Cal. 4th 446 (2005), holding that there
had to be more than evidence of consensual relationships or
affairs, such as sexual favoritism toward the employee engaging
in the relationship, in order to maintain a viable sexual
harassment claim.  The court recognized that an isolated instance
of such favoritism would not be sufficient to sustain a claim but
it found that:

> when such sexual favoritism in a workplace is sufficiently
> widespread it may create an actionable hostile work
> environment in which the demeaning message is conveyed
> to female employees that they are viewed by management
> as 'sexual playthings' or that the way required for women
> to get ahead in the workplace is by engaging in sexual
> conduct with their supervisors or management.

<u>Id.</u> at 451.  The widespread sexual favoritism that permeated the
workplace in <u>Miller</u> consisted of evidence that female employees
were being rewarded by submitting to their superiors'
advances; favored women flaunted their relationships with
supervisors; there was public fondling; one supervisor admitted
he could not control his paramour because of their relationship;
and an internal investigation found, in fact, favoritism.  <u>Id.</u> at
453-55.  Plaintiff's evidence here, even if considered in total,
falls woefully short of the evidence in <u>Miller</u>.   Thus,
plaintiff's claim based on this conduct also fails.

Defendants' motions with respect to plaintiff's sexual
harassment claim are GRANTED.

### 2.    Retaliation for Engaging in Protected Activity – Title VII and FEHA

Plaintiff brings a claim against defendants under Title VII,
42 U.S.C. § 2000e *et seq.*, for unlawful retaliation based upon

23

plaintiff's complaints of sexual harassment and gender discrimination.  Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation under Title VII, plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two.  Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003).  If plaintiff is able to assert a *prima facie* retaliation claim, the "burden-shifting" scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.

Under McDonnell Douglas, once plaintiff makes out a prima facie case of retaliation, the burden shifts to defendants to set forth a legitimate, non-discriminatory reason for the adverse employment action.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).  If defendants can make this showing, plaintiff must demonstrate that the reason is a pretext for retaliation.  Plaintiff may demonstrate pretext in one of two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer."  Chuang v. Univ. of Calif. Davis, Board of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000).  The factual inquiry regarding pretext requires a new level of specificity.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981).

Plaintiff must produce *specific* and *substantial* evidence that defendants' reasons are really a pretext for discrimination. <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 661 (9th Cir. 2002).

Defendants move for summary judgment, contending plaintiff cannot establish a *prima facie* case of retaliation, and even if she could, plaintiff cannot demonstrate defendants' reason for terminating plaintiff, *i.e.* that plaintiff abandoned her employment, was a pretext for discrimination. As to plaintiff's *prima facie* case, plaintiff submits evidence sufficient to raise a triable issue of fact as to each of the requisite elements. Plaintiff maintains she initially complained of sexual harassment and gender discrimination on January 2, 2003 when she reported to Faille Fisch's alleged stalking of her and his treatment of other women in the Department; plaintiff asserts thereafter between January 2 and 15, 2003, she also made reports to Prieto and Carlson. Defendants dispute that plaintiff "officially" made reports of sexual harassment or gender discrimination at these times but that dispute presents a triable issue for the jury. Moreover, at a minimum, Prieto concedes he was informed of plaintiff's complaints of harassment and discrimination when he received her attorney's letter of February 20, 2003 (RUF ¶ 162), and in April 2003, plaintiff filed an EEOC complaint. Such complaints constitute "protected activity." <u>Brooks</u>, 229 F.3d at 928.

Plaintiff suffered an adverse employment action in her termination in September 2003. <u>O'Day v. McDonnell Douglas</u>

25

1  Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996).[18]

2      Finally, the temporal proximity (of less than ninth months

3  at the latest) between plaintiff's complaints of harassment and

4  discrimination and her ultimate termination sufficiently raises a

5  triable issue of fact as to the causation element of plaintiff's

6  *prima facie* case.   Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th

7  Cir. 1986) (causation sufficient to establish this element may be

8  inferred from circumstantial evidence, such as an employer's

9  knowledge that the plaintiff engaged in protected activity or the

10 close proximity in time between the protected activity and the

11 adverse action).

12     Because plaintiff can sustain her initial burden to

13 establish a *prima facie* case of retaliation, the burden shifts to

14 defendants to present evidence of a legitimate, non-

15 discriminatory reason for plaintiff's termination.   Defendants

16 have done so; indeed, plaintiff does not dispute that defendants

17 can meet their burden.   Defendants offer evidence that they

18 terminated plaintiff in September 2003 for abandoning her

19 employment, in that they believed she had not made a timely and

20 adequate request to extend her leave of absence.   (RUF ¶s 106-

21 110, 138-142.)

22

23

24        [18]    Throughout her complaint and opposition papers,

25 plaintiff makes vague references to a plethora of other claimed
   "protected activities" she engaged in and "adverse employment

26 actions" taken against her by defendants, but she wholly fails to
   demonstrate how these purported activities and employment actions

27 meet the standards under Title VII.   The court finds herein that
   only respect to her complaints of sexual harassment and gender

28 discrimination can plaintiff sustain her burden to establish a
   *prima facie* case of unlawful retaliation.

Once a defendant carries the burden of sufficiently articulating a legitimate, non-retaliatory reason for an adverse employment action, "the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away." Yartzoff, 809 F.2d at 1377 (citing Burdine, 450 U.S. at 255 & n.10). The burden then shifts back to the plaintiff "to raise a genuine factual question whether [the defendants'] stated reason is in reality a mere pretext [for a discriminatory motive]." Miller v. Fairchild Indus., Inc., 797 F.2d 727, 732 (9th Cir. 1986) (citing Lowe v. City of Monrovia, 775 F.2d 998, 1008 (9th Cir. 1985)). Plaintiff does not specifically discuss, in her opposition, her burden in this regard; rather, she argues only that triable issues of fact exist as to her prima facie case. Clearly, more is required for plaintiff to withstand summary judgment, and the court could properly grant defendants' motions based on plaintiff's lack of opposition (E.D. Cal. L.R. 78-230(c)). Nevertheless, the court has considered plaintiff's filings in their entirety, and at best, plaintiff points to the Carlson investigation and her eventual reinstatement as evidence of a pretextual motive.

According to plaintiff, the Carlson investigation was a "witch-hunt" against her, a mechanism for the Department to build a case against her, as demonstrated by the employee interview statements contained in Carlson's report which heavily criticized plaintiff's professional abilities. Carlson's February 2003 report and his attached notes from the employee interviews, relied on by plaintiff for the truth of the matters asserted therein, are rank hearsay and thus inadmissible. Fed. R. Evid.

801, 802, 803.  Plaintiff cannot rely on the report or the
employees' alleged statements against her.  Ultimately, as
evidence, plaintiff has only her *allegation* that the
investigation was performed for an illicit purpose.  Plaintiff's
bald assertions are not sufficient, "specific and substantial,"
evidence of pretext, particularly considering the evidence
proffered by defendants that the investigation was a general
"morale investigation," performed for Prieto's personal benefit
to assess the state of his Department.  <u>Aragon</u>, 292 F.3d at 661.
Indeed, defendants did not use the report or any of the
employees' statements as a basis to terminate plaintiff.

        As to plaintiff's reinstatement, following her
administrative appeal, the arbitrator's decision, finding the
County did not have cause to terminate plaintiff's employment, is
not admissible; the decision itself is hearsay which is not
properly relied on by plaintiff.  Fed. R. Evid. 801, 803.
Moreover, even if the court could consider the decision, the fact
that plaintiff was reinstated does not establish a discriminatory
motive.  While the hearing officer found error in defendants'
decision to terminate plaintiff, based on their application of
the relevant County Codes concerning leaves of absence, that
finding is not evidence of a *discriminatory* firing.  Indeed,
plaintiff did not argue to the hearing officer that she was fired
for discriminatory reasons, albeit gender discrimination or
unlawful retaliation.[19]

---

[19]    For these reasons, plaintiff's argument for application
of res judicata/collateral estoppel to the hearing officer's
decision are wholly unavailing.

Because plaintiff's sole evidence of pretext is her conclusory statements about defendants' alleged discriminatory motive, she cannot withstand defendants' motions as to these claims. <u>National Steel Corp. v. Golden Eagles Ins. Corp.</u>, 121 F.3d 496, 502 (9th Cir. 1997) (recognizing that conclusory statements without factual support are insufficient to defeat a motion for summary judgment). As the Ninth Circuit recognized in <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1028 (9th Cir. 2001):

> [a] plaintiff's belief that a defendant acted from an unlawful motive, without evidence to support that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent. . . . It is not enough for a witness to tell all she knows; she must know all she tells.[20]

Plaintiff has not proffered any admissible evidence to demonstrate that defendants' legitimate, non-discriminatory reason for her termination is not credible, or that unlawful discrimination was the more likely motivation for her termination. As such, plaintiff has failed to meet her burden of showing that defendants' proffered reason is merely a pretext for discrimination.

Defendants' motions as to plaintiff's Title VII/FEHA retaliation claims are therefore GRANTED.

---

[20]   In <u>Carmen</u>, the court affirmed a grant of summary judgment to the defendant employer on a retaliation claim where plaintiff did not testify to any admission by a representative of defendant or present any other direct or circumstantial evidence to support her *assertion* of retaliation. <u>Id.</u>

3.   **Retaliation for Exercise of Free Speech Rights –
        Section 1983**[21]

Defendants move for summary judgment as to plaintiff's
retaliation claim arguing plaintiff cannot demonstrate she
engaged in speech protected by the First Amendment, and even if
she could, plaintiff cannot demonstrate that her speech was a
substantial or motivating factor in defendants' decision to
terminate her.   To establish a claim for retaliation in violation
of free speech rights, a public employee plaintiff must
demonstrate: (1) she engaged in constitutionally protected
speech; (2) the employer took adverse employment action against
the employee; and (3) the employee's speech was a "substantial or
motivating" factor in the adverse action.   <u>Freitag v. Ayers</u>, 468
F.3d 528, 543 (9th Cir. 2006).   The first and third elements are
at issue on this motion as the parties do not dispute that
defendants took adverse employment action against plaintiff when
they terminated her.   However, the court need not reach the third
element, as plaintiff cannot demonstrate she engaged in
constitutionally protected speech.

Whether plaintiff engaged in such speech is a question of
law for the court to decide, considering the content, form and
context of the speech.   <u>Connick v. Meyers</u>, 461 U.S. 138, 148 n. 7

---

[21]   Section 1983 does not create any substantive rights but
rather provides a vehicle whereby a plaintiff can challenge
actions by governmental officials.   To establish a violation of
§ 1983, a plaintiff must demonstrate that (1) the action occurred
under color of state law and (2) the action resulted in the
deprivation of a constitutional right or federal statutory right.
<u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) (internal
quotations and citations omitted).   Here, it is undisputed that
defendants acted under "color of state law."   The only issue then
is whether defendants violated plaintiff's constitutional rights,
namely, her First or Fourteenth Amendment rights.

(1983).  A public employee addresses a matter of public concern
when his speech relates to an issue of "political, social, or
other concern to the community."  Id. at 146.  "Speech that
concerns issues about which information is needed or appropriate
to enable the members of society to make informed decisions about
the operation of their government merits the highest degree of
first amendment protection."  Coszalter v. City of Salem, 320
F.3d 968, 973 (9th Cir. 2003).  In contrast, "speech that deals
with individual personnel disputes and grievances and that would
be of no relevance to the public's evaluation of the performance
of governmental agencies, is generally not of public concern."
Id.  In defining the scope of First Amendment protection afforded
to public employees' speech, the Supreme Court has distinguished
between speech "as a citizen upon matters of public concern" at
one end and speech "as an employee upon matters only of personal
interest" on the other.  Connick, 461 U.S. at 147.  Thus, the
relevant inquiry under Connick is the point of the speech in
question--was it the employee's point to bring wrongdoing to
light or was the point to further some purely private interest?
Roth v. Veteran's Admin. of United States, 856 F.2d 1401, 1406
(9th Cir. 1988).

    Here, plaintiff bases her claim on her various reports of
alleged misconduct by the Department and its employees,
including: (1) plaintiff's statements to Carlson during her
January 2003 interview; (2) her verbal complaints to Faille and
Prieto about Fisch's alleged stalking of her; (3) her EEOC and
FEHA complaints against the Department and its employees alleging
she was sexually harassed and discriminated against; (4) her

31

workers' compensation and disability retirement claims; (5) her police report of Fisch's alleged stalking of her; and (6) the instant complaint. (See e.g. PDF ¶s 80-125.)  These reports of wrongdoing pertained wholly to plaintiff's *personal* interests, namely, *her* working conditions at the Department.  See e.g. McKenzie v. Milwaukee County, 381 F.3d 619, 626 (7th Cir. 2004) (finding the plaintiff's speech, concerning complaints about her supervisor, which she voiced internally to management, not constitutionally protected for purposes of a Section 1983 claim). Similarly here, plaintiff's complaints did not concern matters of general import to the public at large but rather involved matters pertaining to *her* "individual personnel disputes and grievances" and as such, the court cannot find that her speech was constitutionally protected for purposes of bringing a First Amendment retaliation claim under Section 1983.  Roe v. City of San Diego, 356 F.3d 1108, 1112-13 (9th Cir. 2004) (holding that "employee comment on matters related to personal status in the workplace," do not qualify for First Amendment protection).

Defendants' motions as to this claim for relief are GRANTED.[22]

---

[22]     As to defendant County, plaintiff's Section 1983 claims are, alternatively, properly dismissed on the ground plaintiff cannot establish a viable claim for relief under Monell v. Department of Social Servs., 436 U.S. 658 (1978) (finding a municipality may be liable under Section 1983 as a result of a governmental policy or custom).  Plaintiff, however, provides no evidence that the County had a policy or custom which inflicted injury upon her.  As such, plaintiff's Section 1983 claims against the County are dismissed on this alternative basis.

**4.  Disability Discrimination – ADA and FEHA**

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability."  42 U.S.C. § 12112(a); <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1480 (9th Cir. 1996).  To survive a motion for summary judgment under the ADA, plaintiff must establish the following elements of a *prima facie* case of disability discrimination:  (1) she was a disabled person within the meaning of the ADA; (2) she was a "qualified individual;" (3) defendants terminated her, or otherwise unlawfully discriminated against her in regard to the terms, conditions and privileges of employment; (4) because of her disability.  42 U.S.C.A. § 12101 *et seq.*; <u>see</u> <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243 (9th Cir. 1999).[23]

As to the first requirement, the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "In general, 'substantially limited' refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction 'as to the condition, manner, or duration' under which an individual can perform the particular activity."  <u>Thompson v. Holy Family Hosp</u>., 121 F.3d 537, 539 (9th Cir. 1997).  Defendants argue plaintiff cannot establish this very first element of an ADA claim, and thus, summary judgment should be granted in their favor.

---

[23]   The <u>McDonnell Douglas</u>-burden shifting approach set forth above applies to the ADA as well.  <u>Id.</u>

33

1    The court agrees.  First, the court notes that plaintiff
2    offered no substantive opposition to defendants' motions as to
3    this claim, other than to simply state the elements of an ADA
4    claim.  (Opp'n, filed May 30, 2007, at 40:7-10.)  Nevertheless,
5    the court has considered plaintiff's responses to defendants'
6    statement of undisputed facts and her proffered evidence and
7    finds that plaintiff cannot sustain her burden on this requisite
8    element.  Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789,
9    794 (9th Cir. 2001) (plaintiff bears the burden of proving she is
10   disabled within the meaning of the ADA).

11       While plaintiff was diagnosed with an adjustment disorder
12   (RUF ¶ 99), medical diagnosis of an impairment is not sufficient
13   to sustain an ADA claim.  Toyota Motor Mfg. Ky. v. Williams, 534
14   U.S. 184, 195 (2002).  To be protected under the ADA, the
15   disability must also substantially limit a major life activity.
16   29 U.S.C. § 12102(2).  In this case, there is no such evidence.

17       Although not articulated by plaintiff, the only arguable
18   limitation at issue here, based on plaintiff's claimed mental
19   impairment, would be plaintiff's ability to work.  To show a
20   substantial limitation on the ability to work, plaintiff must be
21   "significantly restricted in the ability to perform either a
22   class of jobs or a broad range of jobs in various classes
23   compared to the average person having comparable training, skills
24   and abilities."  Niimi-Montalbo v. White, 243 F. Supp. 2d 1109,
25   1122 (D. Haw. 2003).  Plaintiff concedes she was not disabled
26   from working in law enforcement generally.  Indeed, she filled
27   out an application for a position with the Vallejo Police
28   Department in August 2003, which she later submitted in October

34

2003. (RUF ¶ 174.) Additionally, during her time off work from the Department, plaintiff continued to run her kennel and dog training business on a full-time basis. (RUF ¶ 175.) Plaintiff also testified that the only reason she could not work for any other law enforcement agency was because of the damage she believed the County had caused to her reputation; she did not testify that her inability to work elsewhere was due to any disability. (RUF ¶ 176.) With respect to the Department, plaintiff testified that it was people at the Department rather than the functions of the job of deputy sheriff that she claimed prevented her from returning to work. (RUF ¶ 177.)[24]

As to this latter admission, in analogous cases, courts have routinely found such claims of "selective disability" based on a desire to not work for certain people inadequate to demonstrate a substantial limitation on the ability to work. See e.g. Byrnes v. Lockheed-Martin, Inc., 2005 U.S. Dist. LEXIS 39060, *13 (N.D. Cal. 2005) (referring to claims where a plaintiff asserts a disability based on her employer's failure to assign her to another supervisor as "boss-ectomy" claims, not cognizable ADA claims); Johnson v. Peralta Comm. Coll., 1997 U.S. Dist. LEXIS 14005 (N.D. Cal. 1997) (holding the major life activity of working is not substantially limited because of personality conflicts with co-workers); Weiler v. Household Financial Corp, 101 F.3d 519, 524-25 (7th Cir. 1996) (rejecting the plaintiff's

---

[24] Plaintiff attempts to dispute these facts, citing generally "Erickson Decl." While Erickson, plaintiff's treating physician, describes plaintiff's diagnosed "adjustment disorder," and treatment thereof, his declaration is not evidence refuting these facts and the testimony of plaintiff, herself.

claim of disability where the plaintiff went out on a leave of absence following a confrontation with her supervisor and refused to return to work until she was assigned a new supervisor and concluding if plaintiff could "do the same job for another supervisor, she can do the job and does not qualify [as disabled] under the ADA"); Palmer v. Cir. Ct. of Cook County, 905 F. Supp. 499, 507-08 (N.D. Ill. 1995) (holding that a personality conflict with a supervisor or co-worker does not establish a disability even if it produces anxiety and depression, as such conflicts often do).

Thus, here, for the alternative reasons that plaintiff sought out other law enforcement employment and she continued to work gainfully as a dog breeder and trainer, or plaintiff's claimed disability was selective and environmental, the court cannot find that plaintiff was disabled for purposes of the ADA or FEHA.[25] Defendants' motions with respect to these claims as well as plaintiff's ADA and FEHA "failure to accommodate" claims are therefore GRANTED.[26]

---

[25] Even under FEHA's more liberal standard, requiring only proof that the plaintiff is precluded from "a particular employment" because of a disability, plaintiff cannot prevail. See Cal. Gov't Code § 12926.1 (Notes of Decision, citing Dee v. Vintage Petroleum, Inc., 106 Cal. App. 4th 30, 33 (2003) [recognizing that where an employee is able to do her job but not for her particular supervisor she is not limited in working for purposes of FEHA]).

[26] In addition to forbidding disparate treatment of persons with disabilities, the ADA and FEHA also make it unlawful for an employer to fail to provide reasonable accommodations for those with known physical or mental limitations or otherwise qualified individuals with disabilities, unless the accommodations would impose an undue hardship on the employer. 42 U.S.C. § 12112. Because plaintiff cannot meet her burden to demonstrate a qualifying disability, she likewise cannot maintain a failure to reasonably accommodate claim. Kennedy v. Applause,

1

   **5.   Equal Protection – Section 1983**

2        Plaintiff alleges in her complaint that she was "treated

3 differently because of her involvement in protected activity."

4 (Compl., ¶ 78.)  Defendants move for summary judgment as to this

5 claim arguing plaintiff has no evidence of defendants'

6 discriminatory animus towards plaintiff as result of her gender.

7 "To state a claim under [Section 1983] for a violation of the

8 Equal Protection Clause of the Fourteenth Amendment a plaintiff

9 must show that the defendants acted with an intent or purpose to

10 discriminate against the plaintiff based upon membership in a

11 protected class."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686

12 (9th Cir. 2001) (internal quotations and citation omitted).

13       Here, this claim fails for the same reasons plaintiff's

14 gender discrimination claim fails.  Plaintiff cannot establish a

15 *prima facie* case of gender discrimination, tying any of the

16 alleged workplace harassment *to her on the basis of her gender*,

17 and as such, she similarly cannot sustain her burden on an equal

18 protection claim.

19       **6.   Procedural Due Process – Section 1983**

20       Defendants move for summary judgment on plaintiff's

21 procedural due process claim, arguing that even assuming

22

23

24

25

26

27

28
90 F.3d 1477, 1480-81 (9th Cir. 1997).

plaintiff had a cognizable property[27] or liberty[28] interest in her

employment, she was afforded constitutionally adequate due

process prior to her termination.  To succeed on her procedural

due process claim, plaintiff must demonstrate: (1) she had a

constitutionally protected liberty or property interest; (2) the

deprivation of that interest by the government; and (3) a lack of

adequate process.  Portman v. County of Santa Clara, 995 F.2d

898, 904 (9th Cir. 1993).  As to the latter requirement, in this

context of government employment, plaintiff was entitled, at a

minimum, to pre-termination notice and an opportunity to respond

_____

[27]    Defendants did not contend that plaintiff had no
protectable property interest in her County employment.  The
court assumes as an apparent, permanent employee of the County,
plaintiff had, at a minimum, a constitutionally-protected
*property* interest in her employment.

[28]    In her "Eighth Cause of Action," for violation of the
"Fourteenth Amendment–Liberty Interest," plaintiff alleged a
procedural due process claim based upon the deprivation of her
"liberty interest" in her employment.  In Bollow v. Fed. Reserve
Bank, 650 F.2d 1093, 1100-01 (9th Cir. 1981), the Ninth Circuit
recognized that a liberty interest may be implicated where the
reasons for dismissal from employment are "sufficiently serious
to stigmatize or otherwise burden the individual" so that she "is
not able to take advantage of other employment opportunities."
(Internal quotations and citation omitted).  In other words, the
termination must be so damaging to an employee's reputation that
it would effectively foreclose the employee from pursuing her
chosen career.  Id.  Defendants moved for summary judgment as to
this claim, contending plaintiff cannot meet this standard since
she concedes she never told anyone her employment with the County
was terminated; she admits she was never denied employment
subsequent to her termination; and the purported "criminal
charges" defendants made against her, even if true [which
defendants dispute], were never filed (publicized).  Id. at 1101
(recognizing that "unpublicized accusations do not infringe
constitutional rights); see also Landrigan v. City of Warwick,
628 F.2d 736, 744 (1st Cir. 1980) (finding no constitutional
injury where the submission of a report to the District Attorney
for investigation did not result in any criminal charges being
filed).  The court does not separately address this issue because
for the reasons set forth below, even assuming a cognizable
*liberty*, as opposed to, property interest, in her employment,
plaintiff received adequate due process.

in a hearing appropriate to the nature of the case.  <u>Cleveland</u>
<u>Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985).  The
pretermination hearing, though necessary, need not be elaborate.
<u>Id.</u> at 545.  Rather, "'[t]he formality and procedural requisites
for the hearing can vary, depending upon the importance of the
interests involved and the nature of the subsequent
proceedings.'"  <u>Id.</u> (citations omitted.)  "In general, 'something
less' than a full evidentiary hearing is sufficient prior to
adverse administrative action."  <u>Id.</u> (citation omitted.)

        Here, it is undisputed that plaintiff received both notice
and a hearing.  She received prior notice of her termination in
the September 23, 2003 "Notice of Proposed Termination," and she
was given an opportunity to respond in a hearing before Prieto
and later via an administrative appeal.  (RUF ¶s 111-115, 123.)
Ultimately, plaintiff was reinstated to her position as a deputy
sheriff.[29]  (RUF ¶ 123.)

        Therefore, defendants' motions as to plaintiff's procedural
due process claim are GRANTED.[30]

_____

        [29]  Plaintiff did not specifically address this claim in
her opposition.  On that basis alone, the court could grant
judgment in defendants' favor.  However, the court has
nonetheless considered the underlying evidence submitted by
plaintiff but none raises a triable issue of fact as to this
claim.  The facts stated above are undisputed and require that
judgment be entered in favor of defendants on this claim.

        [30]  Plaintiff also alleged in her complaint a deprivation
of due process based on her application for disability
retirement.  (Compl., ¶ 85.)  However, a vested right to
disability retirement requires a permanent work-related injury.
<u>Ostlund v. Bobb</u>, 825 F.2d 1371, 1373 (9th Cir. 1987).  In order
to qualify for PERS disability retirement, a law enforcement
officer must show that she "is incapacitated from continuing to
perform [her] usual duties" not only for the department she is
presently working for, but "also that [she] is incapacitated from
performing the usual duties of a patrol officer for other

7.   **POBR**

Defendants also move for summary judgment with respect to plaintiff's sole state law claim for violation of the POBR. However, because all of plaintiff's federal claims for relief are hereby dismissed, the court declines to assume supplemental jurisdiction over plaintiff's POBR claim.  See <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1997)(en banc) (recognizing that a court should normally decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it had original jurisdiction); <u>Gini v. Las Vegas Metropolitan Police Dept.</u>, 40 F.3d 1041, 1046 (9th Cir. 1994) ("'[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'") (quoting <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 993 (9th Cir. 1991)) (emphasis added).  Here, plaintiff "does not argue that her case is in any way *unusual*," meriting this court's retention of her state law claim.  <u>Id.</u> at 1046.  As such, in light of the dismissal of all federal claims for relief and considering the uniquely state law nature of the POBR claim (<u>see</u> 28 U.S.C. § 1367(c)(1)), the court declines to rule on plaintiff's remaining state law claim.  Said claim is dismissed without prejudice.  <u>Id.</u>

---

California law enforcement agencies . . . ." <u>Nolan v. City of Anaheim</u>, 33 Cal. 4th 335, 342 (2004).  Here, plaintiff clearly cannot make this showing as she has returned to work. (RUF ¶ 123.)

**CONCLUSION**

For the foregoing reasons, defendants' motions for summary judgment are GRANTED with respect to plaintiff's federal claims for relief.  As to plaintiff's remaining state law claim under the POBR, the court declines to exercise supplemental jurisdiction over said claim and hereby dismisses the claim without prejudice.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: June 29, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE